In re the MARRIAGE OF Gary L. LALONE and Sharon M. Lalone.

Upon the Petition of Gary L. Lalone, Appellee,

and Concerning Sharon M. Lalone, Appellant.

No. 90–904.

Supreme Court of Iowa.

May 15, 1991.

Alice S. Horneber of Margolin, Gildemeister, Willia, Mugan & Keane, Sioux City, for appellant.

Gary W. Armstrong of Mack, Hansen, Gadd, Armstrong & Schiller, P.C., Storm Lake, for appellee.

LARSON, Justice.

Sharon Lalone's appeal from a decree of dissolution claims error in child support and alimony allowances, division of some of the parties' marital assets, and the allowance of attorney fees. We affirm.

Our review of the evidence is de novo. Gary and Sharon were married in 1972. At that time, Gary had graduated from college with a degree in business administration, and Sharon had attended college part-time. Following their marriage, both parties worked full time. However, since the birth of their first child in 1979, Sharon has worked only part-time, averaging less than $5000 per year in income. Sharon has assumed the primary responsibilities for the home and child care and is not presently employed outside the home. The children of the parties, at the time of the dissolution, were seven and eleven years of age. Gary was forty, and Sharon was thirty-seven.

In 1982, Gary assumed a management position with a chain of retail clothing stores, advancing to the position of regional manager and manager of the local Storm Lake store. Gary's base salary is $37,200, and he receives family medical and dental benefits from his employer. In addition, a substantial yearly bonus is paid to Gary based on a percentage of the company profits. The bonus is paid each April. Gary's income had averaged in excess of $100,000 for the five years preceding the dissolution. In 1990, his gross income was $144,428.

The parties entered a pretrial stipulation regarding the disposition of some of their assets and agreed on custody and visitation. Sharon received physical care of the children, and Gary received liberal visitation. Physical care and visitation are not issues on appeal.

I. *Child Support.*

■ The district court ordered Gary to pay child support of $1631.50 per month for as long as Sharon was entitled to support for the two children. When the oldest of the children stopped receiving support, the support obligation was to be reduced to $1132.50 per month. Sharon contends that these amounts are inadequate.

In setting child support, the court followed our support guidelines adopted in September 1989. We adopted new support guidelines in October 1990, after the trial in this case, and both parties request that we apply the new guidelines in this appeal.

Our guidelines provide charts to be used in determining the amount of child support. Under the guidelines, the amounts may be adjusted if the court finds, and rules in writing, that an adjustment is necessary to provide for the needs of the children and to prevent "substantial injustice."

Application of the chart first involves determination of the net monthly income of each parent. Although the amount of Gary's bonus depends on the success of his business, we believe the record shows that his income will remain at about its present level. Based on Gary's 1990 income of $144,528, which includes his bonus, and after deduction of federal and state income taxes and social security, his net monthly income is $8242 without deduction for alimony payments made to Sharon. Sharon will receive alimony of approximately $1500 per month and will receive the income from the liquid assets set off to her in the decree in the original amount of $57,928. She will, of course, be obligated to pay income tax on this income.

Our guidelines provide this with respect to setting child support for noncustodial parents with net monthly income of over $3000:

> In this range the appropriate figure is deemed to be within the sound discretion of the court or the agency fixing support by administrative order. The amount of support payable by a non-custodial parent with a monthly net income of $3001 or more shall be no less than the dollar amount as provided in the guidelines for non-custodial parent with a monthly net income of $3000.

Using the guidelines, a noncustodial parent with $3000 net income would be required to pay thirty percent for two children if the custodial parent had $1000 or more income per month. Using the guide-

lines and applying the $3001 monthly income figure, Gary would be required to pay a minimum monthly child support of $900 per month. Under the decree, Gary's obligation is $1631.50 for the two children, and he is also required to provide medical and dental insurance. Therefore, the amount allowed is substantially in excess of the minimum amount required by the guidelines.

Sharon complains that the court should not have deducted Gary's alimony payments to her in determining his net income. Our child support guidelines provide that a noncustodial parent's income may be reduced for *"[p]rior* obligation[s] of child support and spouse support actually paid pursuant to court or administrative order," Child Support Guideline (9) (emphasis added), but they do not provide for deduction of alimony under the present decree.

Nevertheless, as the district court noted here, alimony under the present decree will affect the disposable income of both parents, and it would "result in substantial injustice to Gary if he were required to make large alimony payments and the effect of those payments were ignored in computing his child support obligation."

Our guidelines give discretion to the district court in setting child support to adjust the amounts provided by the guidelines "upward or downward ... if the court finds such adjustment necessary to provide for the needs of the children and to do justice between the parties under the special circumstances of the case."

We agree with the district court that the present alimony has an effect on the income of both parties. Consideration of the amount of alimony paid under the present decree, while not provided by our guidelines as a deduction from income, may nevertheless be considered by the court in an attempt to "do justice between the parties." The district court properly considered the amount of alimony paid to Sharon in determining Gary's child support, and we conclude that the amount of child support ordered was appropriate.

II. *Alimony.*

■ The district court ordered Gary to pay alimony of $1500 per month for ten years. Alimony would terminate earlier upon the death of either party or Sharon's remarriage. Sharon contends that the court should not have placed any conditions on Gary's alimony obligation, although she does not challenge either the amount or the ten-year limit on its payment.

Sharon's argument that she should have been awarded unconditional alimony is based on her argument that it was allowed as "reimbursement" alimony. *See In re Marriage of Francis,* 442 N.W.2d 59, 64 (Iowa 1989). Reimbursement alimony is predicated upon economic sacrifices made by one spouse during the marriage which directly enhances the future earning capacity of the other. Reimbursement alimony is not subject to modification or termination until full payment has been made, except that it will terminate upon the recipient's death. *Id.*

We do not agree that this is reimbursement alimony. This is not a case similar to *Francis,* in which the wife directly increased the husband's earning capacity by assisting in his obtaining a medical degree. In this case, while Sharon worked part-time, her efforts did not directly increase Gary's earning capacity. Rather, the district court found, and we agree, that both Gary and Sharon contributed to the success of the family unit and were rewarded with financial success. We believe that the equal division of the marital property adequately compensated Sharon for any contributions made by her.

■ Sharon also contends that the alimony should continue beyond the time of her death. Gary responds that, because alimony is based on a need for support, this need would terminate on her death. And, although she contends it should be available for payment to her children, Gary points out that the decree required him to provide $500,000 in life insurance for the benefit of the two children. Further, under Internal Revenue Code section 71(b)(1)(D), periodic payments must cease on the death of the recipient in order to be considered alimony.

We agree that alimony should cease on Sharon's death.

■ As to Sharon's contention that alimony should not terminate on Gary's death, it is the general rule that alimony will terminate upon the death of the payor. *In re Marriage of Bornstein*, 359 N.W.2d 500, 503 (Iowa App.1984). Also, as previously noted, the decree provides for life insurance in a substantial amount for the benefit of the children. Inclusion of this amount of money in the family unit, as Gary contends, would substantially alleviate any financial problems arising from Gary's death.

■ Sharon also complains that the alimony would terminate on her remarriage. Under our law, even if a decree does not provide for automatic termination on remarriage, there is a presumption that alimony will cease in the absence of a showing of extraordinary circumstances. *In re Marriage of Shima*, 360 N.W.2d 827, 828 (Iowa 1985). If Sharon remarries and remains in need of financial assistance, the burden of showing a need for continued alimony should be on her to do so by an application to modify the decree.

We believe the provision terminating alimony on remarriage is reasonable and is in accordance with our existing law.

### III. *Division of Bonus.*

■ The district court awarded Gary the entire bonus paid to him on April 16, 1990, in the approximate amount of $55,000, stating:

> Most of the earnings received by Gary from his employment are in the form of an annual bonus. Gary is permitted to draw against his anticipated bonus during the course of the year. Most of the bonus, however, is paid in a lump sum. Gary received a lump sum bonus a few days before trial. He will not receive another such bonus until April 1991.
>
> The bonus recently received by Gary is being held by him in two bank accounts. It is in the amount of approximately $55,-000. That amount does not constitute property accumulated by the parties. It

is Gary's current income. It is the majority of the income which Gary will receive this year. It is the majority of the income with which Gary must support himself and pay alimony and child support. It is the majority of the income which forms the basis for the court's determination of Gary's alimony and child support obligations. Since the bonus is Gary's current income, it should be awarded to him. It should not be divided between the parties.

We agree that the bonus is not marital property but is part of Gary's income which has already been taken into consideration in setting the alimony and child support amounts.

### IV. *The Attorney Fees Award.*

■ The district court ordered Gary to pay $2000 toward Sharon's attorney fees. Sharon contends that the district court in doing so abused its discretion and that the court should have ordered Gary to pay all of them.

We believe that the attorney fee award was reasonable. Sharon received in excess of $57,000 in liquid assets, as well as $18,-000 per year in alimony. We believe that she is capable of paying her own attorney fees in excess of the $2000 allowed. We also reject Sharon's request for payment of her appellate attorney fees for the same reasons.

AFFIRMED.