# IN THE COURT OF APPEALS OF IOWA

No. 13-0877
Filed May 29, 2014

IN RE THE MARRIAGE OF KIMBERLY SIGWALT
AND DEAN SIGWALT

Upon the Petition of
KIMBERLY SIGWALT,
     Petitioner-Appellee,

And Concerning
DEAN SIGWALT,
     Respondent-Appellant.

_____

Appeal from the Iowa District Court for Carroll County, William C. Ostlund, Judge.

A husband appeals the provisions of the decree dissolving his marriage.

**AFFIRMED.**

Cami Eslick of Eslick Law, Indianola, for appellant.

Gina C. Badding of Neu, Minnich, Comito & Neu, P.C., Carroll, for appellee.

Considered by Vogel, P.J., and Mullins, J., and Eisenhauer, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**VOGEL, P.J.**

Dean Sigwalt appeals the spousal support, child support, and property distribution provisions of the decree dissolving his marriage to Kimberly Sigwalt. Dean claims (1) the court should not have awarded spousal support to Kim, (2) his 401(k) should be divided based on the percentage method and not the present-value method, (3) the court incorrectly determined Kim's income for child support purposes, (4) he should not have to sell all of his vehicles acquired during the marriage and split the proceeds with Kim, (5) the court assigned an incorrect value to the marital home, (6) the court should have awarded him a toy box, and (7) the court abused its discretion in ordering him to pay $750 of Kim's trial attorney fees.

We affirm the child support order in this case finding the district court correctly imputed an income amount to Kim and affirm the spousal support order finding it equitable in light of the parties' incomes. We do not disturb the court's determination that Dean's 401(k) should be divided using the present-value method. The value the court assigned to the marital home was within the permissible range of evidence, and after awarding each party a vehicle, it was equitable to order the sale of the other vehicles Dean acquired during the marriage. It was appropriate to award Kim the toy box in question, and we find no abuse of discretion in its award of trial attorney fees to Kim. Finally, we award Kim $1500 in appellate attorney fees. We therefore affirm the district court's decree.

**I. Background Facts and Proceedings.**

Dean and Kim were married in 2005. The parties stipulated to joint legal custody and joint physical care of the three minor children; however, they disagreed on Kim's income, leaving child support as an issue for the district court to determine.

Kim was thirty-three years old at the time of trial and maintained an in-home daycare along with a direct sales business. She asserted at trial her annual income amounted to approximately $8000 between her two endeavors. Her 2012 income tax return listed $8751 as her net business income. Dean contended Kim's income was more in the range of $50,000 per year. The trial court imputed to Kim a minimum wage income for the purposes of calculating child support.

Dean was forty-one years old at the time of trial and has been working at Bridgestone Firestone since before the parties were married. The parties agreed he makes approximately $64,000 per year. He also testified he serviced automobiles for a hobby but claimed he has never made a profit, charging just enough to cover his expenses. Neither party kept clear and detailed records of their self-employment incomes and expenses.

Based on its assessment of the parties' respective incomes, the court set the child support at $749.88 per month pursuant to the child support guidelines. The parties disputed the value of the marital home. Kim asserted the home was worth $69,000 based on an appraisal that was done in 2010 when a home equity line of credit was opened. Dean submitted an appraisal he had done just before trial that set the value of the home at $50,000. The court set the current value of

the home at $60,000 for purposes of the dissolution. It gave Dean credit for the premarital equity in the home but assessed against him the advances he took on the home equity line of credit during the dissolution proceedings to pay his attorney fees. Ultimately, the court found an increase in the equity in the home during the marriage in the amount of $6155 and awarded the home to Dean in the property distribution.

Dean purchased, both before and during the marriage, a number of vehicles that he drove or serviced. Kim obtained a list of vehicles titled in Dean's name from the county treasurer's office. Dean asserted during trial a number of those vehicles were either no longer in existence or had little value. The court assigned the two vehicles the parties routinely drove to its respective owner. It ordered any vehicles owned by Dean prior to the marriage to become the sole property of Dean and any other vehicles currently in existence to be sold and the proceeds divided equally between the parties.

The court awarded all of Dean's tools to him, accepting his testimony that "ninety-five percent" of the tools were purchased before the marriage. The court ordered Dean to be responsible for the credit card debt, as this debt greatly increased during the pendency of the dissolution proceeding with Dean paying his attorney fees with two new credit cards. The court directed the debt owed to a furniture company to be paid by Kim, and the court directed the appliances that were purchased with this line of credit also be given to Kim.[1] The court stated

---

[1] In a posttrial order, the court concluded that if the washer and dryer were in fact specifically modified to fit in the marital residence, and if Kim possessed her own washer and dryer already, the washer and dryer in question should remain in the marital residence with Dean.

that while the current division of property could result in an equalization payment from Kim to Dean in the amount of $7000, no such payment would be ordered in this case "in view of the economic circumstances of both parties."

The court awarded to Kim most of the personal property she requested, including a toy box Kim asserted was made by her ex-husband. The court directed the parties to divide the 401(k) plan "pursuant to formula as accumulated only during the course of the marriage." The court awarded Kim spousal support in the amount of $400 per month for sixty months, and the court noted it took into consideration the child support and the substantial debt awarded to Dean when determining the amount. Finally, it awarded Kim $750 in trial attorney fees to be paid by Dean due to the discrepancy in the parties' income.

Dean filed a posttrial motion to reconsider and to clarify. In addition to other requests, he was specifically seeking clarification on the court's division of his 401(k). Dean filed a notice of appeal before the court ruled on the posttrial motion, and Dean did not seek a limited remand from the supreme court to allow the district court to address the posttrial motion. The district court issued an order responding to the motion and specifically held, "[i]t was intended that the *Benson* formula would be used to divide the existing 401(k). If the court has misled the parties as to its intention, it is intended that the Petitioner shall receive 50% of the martial appreciation."

## II. Scope and Standard of Review.

As dissolution cases are heard in equity, our review is de novo. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). We examine the entire record and adjudicate anew the issues raised on appeal. *Id.* However, we

give weight to the factual findings of the district court, especially its determinations of credibility. Iowa R. App. P. 6.904(3)(g). We will modify the district court's ruling only where there has been a failure to do equity. *McDermott*, 827 N.W.2d at 676.

### III. Spousal Support and Child Support.

Dean challenges the district court award of spousal support to Kim and its award of child support. Because both claims are based on Dean's disagreement with the court's determination of Kim's annual income, we will address these claims together. Dean asserts there is a large discrepancy between the amount Kim claims as income and the deposits she makes in her bank account. He also finds her deductions suspect. He claims given the discrepancy and poor record-keeping, the court should not have relied on Kim's testimony, nor should it have imputed income to her, but should have calculated her income using her gross deposits into her account minus her deductions from her handwritten records.

Kim admitted at trial that she comingles many of her purchases for her daycare with her personal-use items; thus, she does not take the full value of her purchases as deductions. She also testified that her bank account deposits are not all attributable to income she receives from her daycare or direct sales business but also include transfers she makes from her savings account and gifts from her parents. During her testimony, the court asked Kim whether she thought she could likely earn more money if she took another job working 8 a.m. to 5 p.m. Kim acknowledged she probably could, particularly in a year when her youngest child goes to school, but she loved running her own daycare. Prior to Kim operating her daycare, she worked a number of different jobs including

working as a feeding assistant at a health center. Kim graduated from high school and maintains the required certifications for her state-licensed daycare but has no postsecondary education.

The court was correct in this case to use Kim's earning capacity, minimum wage, in its calculation of the child support rather than the income she reported receiving from her daycare business. *See In re Marriage of Nelson*, 570 N.W.2d 103, 106 (Iowa 1997) ("Before using earning capacity rather than actual earnings a court must however make a determination that, if actual earnings were used, substantial injustice would occur or adjustments would be necessary to provide for the needs of the child and to do justice between the parties."). While Dean asserts Kim's income should be determined from her gross deposits in her bank account, Kim clearly testified the deposits do not represent what she earns in her businesses alone but includes transfers from savings and gifts from her parents. It would do injustice to Kim and the children to use her bank deposits as the basis to calculate her income when those deposits do not accurately represent her income. The district court made a fair and equitable imputation of income to Kim, and we affirm the resulting child support order.

As to Dean's claim regarding spousal support, our review is also de novo, but we give the court considerable latitude in making a spousal support award based on the factors in Iowa Code section 598.21A (2011). *In re Marriage of Anliker*, 694 N.W.2d 535, 540 (Iowa 2005). We will disturb the district court's order only when there has been a failure to do equity.

Dean was clearly the breadwinner in this marriage, earning as much as eight times Kim's annual income generated from her daycare and direct sales

businesses. The court acknowledged Kim was capable of securing employment that could generate a higher level of income. It therefore limited the duration of the spousal support to give her time to secure this employment and become financially better established.

Dean asserts that given the modest duration of the marriage, Kim's ability to work, and the amount of debt he was ordered to assume, an award of spousal support is inequitable. Alternatively, Dean claims that if spousal support is affirmed, it should increase Kim's income and reduce his for child support calculations. The court noted that in determining the amount, it considered the child support calculated under the guidelines and the amount of debt assigned to Dean as part of the property division.

Under the child support guidelines, only prior obligations of spousal support actually paid pursuant to a court or administrative order are deducted from a party's gross monthly income. *See* Iowa Ct. R. 9.5(8). We can vary from the amount of child support calculated under the guidelines if we determine the amount calculated pursuant to the guidelines would be unjust or inappropriate. *See* Iowa Ct. R. 9.11; *see also In re Marriage of Lalone*, 469 N.W.2d 695, 697 (Iowa 1991) ("Consideration of the amount of alimony paid under the present decree, while not provided by our guidelines as a deduction from income, may nevertheless be considered by the court in an attempt to 'do justice between the parties.'"). However, we find no such justification to deviate from the guidelines in this case, and we therefore reject Dean's assertion that the spousal support should be adjusted. The award of spousal support is affirmed.

## IV. Retirement Account.

Next, Dean claims between the district court's decree and district court's posttrial order he is still unclear how to divide his 401(k) plan. The district court in the dissolution decree stated: "The parties are further directed to divide equally any existing pension plans or 401(k) plans pursuant to formula as accumulated only during the course of the marriage." The court in the posttrial order stated: "It was intended that the *Benson* formula would be used to divide the existing 401(k). If the Court has misled the parties as to its intention, it is intended that the Petitioner shall receive 50% of the marital appreciation."

Dean asks that we modify the decree to clarify his 401(k) plan should be divided pursuant to the percentage method found in *In re Marriage of Benson*, 545 N.W.2d 252, 255 (Iowa 1996): the number of years during the marriage benefits under the plan accrued, divided by the total number of years benefits accrued, multiplied by the spouse's share of the martial assets, and finally multiplied by the total accrued monthly benefit upon maturity. Kim, alternatively, claims the district court in the decree was clear that the increase in the 401(k) during the marriage is to be divided equally between the parties. The parties stipulated the value of the plan at the time of the marriage was $81,235.68, and its value at the time of trial was $262,583.48, leaving a marital appreciation of $181,347.80. Kim claims she is entitled to half of this amount. *See Benson*, 545 N.W.2d at 255 (describing the present-value method).

We begin by noting Dean filed the notice of appeal while his posttrial motion seeking clarification of the court's order regarding the 401(k) was pending in the district court. "When a posttrial motion . . . is pending before an appeal is

taken, the judgment or decision to which the motion is addressed is interlocutory until the district court rules on the motion." *IBP, Inc. v. Al-Gharib*, 604 N.W.2d 621, 628 (Iowa 2000). When the party who filed the posttrial motion is the same party who filed the premature notice of appeal, as in this case, there is no jurisdictional problem, but we deem the appellant to have waived and abandoned the posttrial motion. *Id.* In addition, the district court loses jurisdiction to rule on the motion and any ruling has no legal effect. *Id.* Because the district court was deprived of its jurisdiction by the filing of the notice of appeal, we will not consider the language used by the district court in its posttrial order on this issue. We will address Dean's claim in light of the decree language alone.

In *Benson*, the court detailed the difference between "defined benefit plans" and "defined contribution plans." 545 N.W.2d at 254.

> "Under a defined benefit plan, the future benefit to be received is specified in advance and 'defined' by a benefit formula or benefit schedule. The plan contributions are then made as required to fund the specified benefit. Conversely, under a defined contribution plan, the contributions to the fund are specified and 'defined,' but there is no predetermined scale of retirement benefits. Instead, the benefit amount received by the retiring employee is determined by the accumulated contributions allocated to that employee at retirement."

*Id.* (quoting Steven R. Brown, *An Interdisciplinary Analysis of the Division of Pension Benefits in Divorce and Post-judgment Partition Actions: Cures for the Inequities in* Berry v. Berry, 39 Baylor L. Rev. 1131, 1137–38 (1987)). Dean's 401(k) plan with his employer is a "defined contribution plan" as the amount of the benefit he receives upon retirement is determined by the accumulated contributions at retirement. "'Because defined contribution plans are essentially savings plans, their value at any time, including at [dissolution], is determined

easily.'" *Id.* at 256 n.1 (quoting Phoebe Carter & John Myers, *Division and Distribution of the Community Interest in Defined Benefit Pensions:* Schweitzer *Reconsidered*, 18 N.M. L. Rev. 95, 98 (1988)). "Thus, it may be more appropriate to divide and distribute defined contribution plans under the present-value method." *Id.*; *see also In re Marriage of Sullins*, 715 N.W.2d 242, 248 (Iowa 2006) (noting it is normally desirable to divide defined benefit plans using the percentage method).

Dean asserts the application of the present-value method allows Kim to receive a larger share of the plan based on his premarital efforts. He explains his retirement plan experienced substantial growth during the marriage but grew much less in the eleven years prior to the marriage. Given the short duration of the marriage compared to the number of years he has been contributing to his retirement plan, Dean claims it is not equitable to allow Kim to capitalize on his efforts prior to the marriage.

While either division method can be applied to any plan, *see Sullins*, 715 N.W.2d at 248, we seen nothing inequitable in this case in using the present-value method to divide Dean's 401(k) plan. The amount of appreciation the plan experienced during the marriage is easily ascertainable in this case as the parties stipulated to its value both before the marriage and at the time of trial. *See Benson*, 545 N.W.2d at 255 (noting the valuation of a defined benefit pension plan is complicated and requires the services of an actuary). The language the district court used in the decree clearly showed its desire to award half of the marital appreciation to Kim, which is consistent with the application of

the present-value method. We affirm the district court's decree for the application of the present-value method to divide Dean's 401(k).

## V. Property Distribution.

Next, Dean challenges a number of aspects concerning the court's property distribution, including that the court assigned an incorrect value to the marital home. He also asserts it is inequitable to force him to sell the vehicles acquired during the marriage and split the proceeds with Kim because he needs the vehicles to drive to work and earn a living. Finally, he asks that we award him, rather than Kim, a toy box.

**A. Marital Home.** Kim testified the house was worth $69,000 based on an appraisal done of the house in 2010 when the parties applied for a home equity line of credit. This 2010 appraisal set the value of home at $66,000. With the loan money, the parties completed some work on the house including adding a deck, new flooring, a new laundry room, and made a pantry, thereby increasing the value. They also converted the garage to a usable room for Kim's daycare business. Initially, in his answers to interrogatories, Dean also asserted the value of the house was $69,000. He testified he arrived at this number after looking at the asking prices of houses that were similar to the marital home. However, prior to trial Dean had an appraisal done of the home and submitted that appraisal into evidence, which set the market value of the home at $50,000 based on a sales-comparison approach. No explanation was offered for the $16,000 difference between the two appraisals done approximately three years apart. The appraiser in the 2013 appraisal did note, "Fairly low populated area, very few recent comparable sales to select from."

The district court selected $60,000 as the value of the marital home. It noted the value of the home at the time of the marriage in 2005 was approximately $52,000 based on its assessed value. Dean offers no justification for his assertion the value of the marital home decreased over the seven years of the marriage. Because the value the district court assigned to the home was within the permissible range of evidence, we will not disturb it on appeal. *See In re Marriage of Driscoll*, 563 N.W.2d 640, 643 (Iowa Ct. App. 1997).

**B. Vehicles Acquired During the Marriage.** Dean claims that he uses and maintains the vehicles in his possession due to his lengthy commute to work every day in Des Moines. He claims the vehicles have little value and are necessary for him to be able to earn a living. Thus, forcing him to sell the vehicles and divide the profit with Kim would be inequitable.

It was clear at trial that Dean acquired a number of vehicles both before and during the marriage. What is unclear in the record is what vehicles Dean actually still possesses, what vehicles were acquired during the marriage, and what value these vehicles hold. Kim sought a list of the vehicles titled in Dean's name from the county treasurer's office, which included motorcycles, snowmobiles, cars, trucks, and trailers; but Dean claimed at trial he no longer owned many vehicles on the list.

The court awarded Dean any vehicle he owned prior to the marriage; thus, the only vehicles at issue here are those acquired during the marriage. Kim attempted to have an appraiser value the vehicles, but the appraiser was unable to locate many of the vehicles in question. Iowa is an equitable distribution state, and to make that equitable distribution, the court must determine what assets are

available and place values on those assets. *Id.* at 641–42. The court was hampered in this endeavor with respect to the vehicles by Dean's failure to clearly and concisely identify and value the vehicles in his possession. His argument that he uses the vehicles to travel to and from work rings hollow when some of the vehicles involved are trailers, snowmobiles, and ATV's, which are incapable of travel on the roadway. In addition, during the pendency of the dissolution proceeding, Dean sold two of the vehicles, keeping the profit and showing not every vehicle in his possession is critical to his transportation needs. Both Dean and Kim were awarded vehicles in the allocation of assets. We find the court's order that he sell the other vehicles acquired during the marriage, and split the profit with Kim, equitable.

**C. Toy Box.** Finally, Dean asserts the court should have awarded a toy box to him. He claims given the overwhelming number of personal property items Kim received, he should get the toy box as it is one of the few items he requested, and it would make the division more equitable.

No value was placed on this toy box, so it is unclear how awarding it to Dean would make the distribution more equitable. Kim asserted the toy box was built by her ex-husband, while Dean maintains it was purchased from a friend in Arcadia who built it. No other evidence regarding the toy box was received during the trial. We find nothing inequitable in awarding this toy box to Kim.

**VI. Attorney Fees.**

**A. Trial Attorney Fees.** Dean claims the court abused its discretion in ordering him to pay $750 of Kim's trial attorney fees. We review a district court's decision on trial attorney fees for an abuse of discretion. *In re Marriage of*

*Michael*, 839 N.W.2d 630, 635 (Iowa 2013).  Considering the parties' income, we find no abuse of the trial court's discretion in awarding trial attorney fees in this case.

**B.  Appellate Attorney Fees.**  Kim seeks an award of $3500 in appellate attorney fees.  "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion.  In determining whether to award appellate attorney fees, we consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal."  *McDermott*, 827 N.W.2d at 687 (internal quotation marks and citations omitted).  We also consider "whether the party making the request was obligated to defend the trial court's decision on appeal."  *In re Marriage of Gaer,* 476 N.W.2d 324, 330 (Iowa 1991).  After considering these factors, we award Kim $1500 in appellate attorney fees.

Costs on appeal are assessed to Dean.

**AFFIRMED.**