# IN THE COURT OF APPEALS OF IOWA

No. 15-0051
Filed January 13, 2016

**IN RE THE MARRIAGE OF JOHN R. LOCKARD
AND LAURA L. LOCKARD**

**Upon the Petition of
JOHN R. LOCKARD,**
      Petitioner-Appellant,

**And Concerning
LAURA L. LOCKARD,**
      Respondent-Appellee.

_____

Appeal from the Iowa District Court for Dallas County, Donna K. Paulsen, Judge.

John Lockard appeals the economic provisions of the district court's decree dissolving his marriage. **AFFIRMED AS MODIFIED AND REMANDED.**

Ryan A. Genest of Culp, Doran & Genest, P.L.C., Des Moines, for appellant.

Nathan A. Russell and Todd A. Elverson of Elverson Vasey, L.L.P., Des Moines, for appellee.

Considered by Doyle, P.J., and Mullins and Bower, JJ.

**MULLINS, Judge.**

John Lockard appeals the economic provisions of the district court's decree dissolving his marriage to Laura Lockard. John contends the district court erred in (1) failing to deduct spousal support paid for purposes of calculating his child support obligation; (2) ordering John to pay $3000 per month to Laura in permanent spousal support; (3) requiring John to maintain life insurance to secure his spousal support obligation; (4) awarding John the marital home instead of ordering it to be sold and the proceeds divided; and (5) awarding Laura $5000 in trial attorney fees. Upon our de novo review of the record, we affirm as modified and remand for entry of an order consistent with our recalculation of child support.

## I. Background Facts and Proceedings

John and Laura were married in July 1983. They are the parents of four children: N.L., born in 1992, M.L., born in 1996, K.L., born in 2000, and J.L., born in 2003.

John is fifty-one years old and in good health. He earned both a bachelor's degree and a master's degree in computer engineering during the marriage. John worked as a teacher's assistant during graduate school. The parties lived together in a house owned by John's mother while John was in school. After John completed his master's degree, the parties moved to Chicago for John's job. The parties had their first child in 1992 and returned to Des Moines shortly thereafter. John later left his employment to start his own company, Silicon Plains Technologies. Thereafter, John negotiated a buy-out

with his business partner. As part of the buy-out, John received $10,000 per month for twenty-four months and signed a twenty-four-month non-compete agreement. Instead of gaining employment in another field, John began day-trading for the next eighteen months. John did not succeed in this capacity and the parties withdrew funds from a 401(k) account to pay for expenses after John was not fully paid under the buy-out agreement. The parties also faced litigation stemming from debt incurred by John's ex-business partner and filed bankruptcy as a result. John is currently employed as a computer consultant by a company in Colorado and works from home with minimal travel.

Laura is fifty years old. She has an accounting degree and a CPA certificate, both earned during the marriage. Laura worked full time while John was in graduate school and while working toward her CPA. Laura continued to work full time until the birth of their first child. Thereafter, she assumed the role of caretaker for the parties' children. Over the next twenty-two years Laura worked a few part-time jobs, as an accountant for Silicon Plains, an office manager for a dance and gymnastic studio in order to receive a discount on the children's tuition, and helping with the books at the horse stable where the children's horses were kept to decrease boarding charges. In May 2001, Laura suffered a severe stroke. As a result of the stroke, Laura has a permanent "significant disability" and does not have the use of her right arm and wears a brace on her right leg. Because of her disability, she has poor keyboard and ten-key skills. In 2012–2013, Laura took classes to reinstate her CPA certificate but

has been unable to find full-time employment. She currently works as a part-time accountant preparing tax returns.

On November 7, 2013, John filed a petition for dissolution of marriage. The petition came to trial on September 10–12, 2014. Following trial, the district court entered a decree dissolving their marriage. The court awarded the parties joint legal and physical custody of their three minor children.[1] The court found John earns an average gross annual income of $114,564.25[2] and Laura a gross annual income of $12,589.71. It ordered John to pay $513.47 each month to Laura for support of their three minor children, $433.87 per month in support for two children,[3] and $284.43 per month in support for one child.[4] The court also ordered John to pay Laura permanent spousal support in the amount of $3000 per month until either party's death or Laura's remarriage. The court awarded John the marital home valued at $183,000 and ordered John to pay Laura $7948 for her share of the home's $15,896 in equity. The court further ordered John to maintain $200,000 in life insurance, naming Laura as the beneficiary, to secure his child and spousal support obligations. Additionally, the court ordered John to pay $5000 toward Laura's attorney fees.

---

[1] The court found the parties' oldest child, age twenty-two, to be self-sufficient.

[2] The court determined John's average annual income based upon his 2009–2013 tax returns and paycheck stubs for 2014. Laura conceded that although his actual annual income might be higher because John receives additional pre-tax health benefits under his employer's cafeteria plan, $114,564.25 was a fair average of his gross annual income.

[3] John's child support obligation for three children was to end when M.L. reached age nineteen.

[4] The court ordered John may claim as dependents all three minor children on his income taxes for 2014. Starting in 2015, John may claim M.L. and J.L., and Laura may claim K.L. When only one child is eligible to be claimed as a dependent, the parties will alternate claiming the child as a tax dependent.

Following the court's written order, John filed a motion to enlarge or amend the court's findings and conclusions pursuant to Iowa Rule of Civil Procedure Rule 1.904(2). John requested (1) that his spousal support payments be deducted from his income prior to calculating his child support obligation; (2) that the decree provide his spousal support obligation end upon the death of either party, the remarriage of Laura, or when John reaches age sixty-two and becomes eligible for social security benefits; (3) that John's obligation to maintain life insurance terminate upon the conclusion of his child support obligation; and (4) the court order the parties' marital home be sold and the proceeds divided between the parties. The district court denied John's motion. This appeal followed.[5]

## II.      Standard of Review

We review cases tried in equity, such as dissolution cases, de novo. Iowa R. App. P. 6.907; *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015). We give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R. App. P. 6.904(3)(g). Prior cases, though helpful, have little precedential value because we must base our decision primarily on the particular circumstances of the parties presently before us. *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983). We accord the trial court considerable latitude in making factual determinations and will disturb the ruling only when there has been a failure to do equity. *Gust*, 858 N.W.2d at 406.

---

[5] On January 7, 2015, John filed a notice of appeal. Laura filed a motion to dismiss John's appeal, which our supreme court denied.

**III.     Analysis**

John contends the district court erred in (1) ordering John to pay $3000 per month to Laura in permanent spousal support; (2) failing to deduct spousal support paid to Laura for purposes of calculating child support; (3) requiring John to maintain $200,000 in life insurance to secure his spousal and child support obligations; (4) awarding John the marital home instead of ordering that it be sold and the proceeds divided; and (5) awarding Laura $5000 in trial attorney fees. Laura requests an award of appellate attorney fees.

*A. Spousal Support*

John argues the district court erred in ordering him to pay Laura $3000 per month in permanent spousal support until either party's death or Laura's remarriage.   He contends the court should have awarded Laura rehabilitative spousal support in the amount of $1500 for four years and $1000 for an additional two years thereafter.   Alternatively, John requests his permanent spousal support obligation terminate upon his reaching age sixty-two, age sixty-five, or when he retires.

Spousal support is not an absolute right, but depends upon the particular facts and circumstances of each case.  *In re Marriage of Hansen*, 733 N.W.2d 683, 704 (Iowa 2007).  The discretionary award of spousal support is made after considering the factors listed in Iowa Code section 598.21A(1) (2013).[6]

---

[6] The factors to be considered are:
  a. The length of the marriage.
  b. The age and physical and emotional health of the parties.
  c. The distribution of property made pursuant to section 598.21.

Traditional or permanent spousal support is "payable for life or so long as a spouse is incapable of self-support," *In re Marriage of Olson*, 705 N.W.2d 312, 316 (Iowa 2005), with the goal of "provid[ing] the receiving spouse with support comparable to what he or she would receive if the marriage continued," *Gust*, 858 N.W.2d at 408 (quoting *In re Marriage of Hettinga*, 574 N.W.2d 920, 922 (Iowa Ct. App. 1997)). Rehabilitative spousal support is a "way of supporting an economically dependent spouse through a limited period of re-education or retraining following divorce, thereby creating incentive and opportunity for that spouse to become self-supporting." *In re Marriage of Francis*, 442 N.W.2d 59, 63 (Iowa 1989).

The district court found permanent spousal support was appropriate in this case. In making this award, the district court noted the parties had a thirty-one-year marriage, there was a great disparity in their earnings, Laura had helped support John while he earned his master's degree, she had not worked outside the home for twenty-two years and had not developed skills or expertise that

---

d. The educational level of each party at the time of marriage and at the time the action is commenced.

e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.

g. The tax consequences to each party.

. . . .

j. Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21A(1).

would be valuable to employers, she was "significantly disabled" as a result of her stroke, and she was suffering from depression that impacted her ability to maintain a full-time job. In essence, the district court found that given her age and the above circumstances, "it is really not feasible that [Laura] would become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage."

Upon our de novo review, we find the district court properly weighed the statutory factors and the spousal support award in this case does not fail to do equity. *See In re Marriage of Anliker*, 694 N.W.2d 535, 540 (Iowa 2005). Further, we note Laura has a bachelor's degree and a CPA certificate. Thus, no re-education or retraining will help her become self-supporting. Additionally, our supreme court recently held that a spousal support payor's future retirement is too "speculative . . . to be considered in the initial spousal support award." *Gust*, 858 N.W.2d at 416. Similar to *Gust*, we are missing important facts in this case concerning John's retirement plans and the parties' future economic positions. *See id.* John claims he may retire within the next ten years, but we do not know when he will actually retire. *See id.* at 416–17. "We do not know what the relative financial position of the parties will be at the time of [John]'s eventual retirement," or whether he will "maintain consulting relationships or other arrangements that enhance his retirement income." *See id.* at 417. We do not know whether John's health will decline or if Laura's health will worsen. *See id.* And we do not know whether John will be motivated to retire to avoid or reduce his spousal support obligations. *See id.* Therefore, we conclude any request by

John to have his spousal support obligation terminate upon his retirement is best left to a possible modification action "when retirement is imminent or has actually occurred." *Id.* at 418. Accordingly, we affirm the district court's permanent spousal support award of $3000 per month.

John also claims the district court erred in failing to deduct spousal support paid to Laura in calculating his income for child support purposes.[7]

There is a rebuttable presumption that the amount of child support determined in accordance with Iowa's child support guidelines is the correct amount of child support to be awarded. Iowa Ct. R. 9.4. The guidelines enumerate the items that can be deducted from gross income in arriving at the "net monthly income" which is to be used for calculating child support. Iowa Ct. R. 9.5. Under Iowa Court Rule 9.5(8), only prior support obligations are deductible from net monthly income, not support ordered in the present decree. Iowa Ct. R. 9.5; *In re Marriage of Lalone,* 469 N.W.2d 695, 697 (Iowa 1991). However, the district court has discretion to include the current alimony amount in the child support calculations if failure to do so would result in substantial injustice to either party or the child. *Lalone*, 469 N.W.2d at 697.

The district court here did not deduct the spousal support to be paid by John when determining his income but did include the amount of spousal support

---

[7] In his brief, John argues the court failed to both include spousal support Laura received in calculating her income and deduct spousal support John paid when determining his income for child support purposes. We note the district court considered the spousal support ordered here as income to Laura for purposes of calculating child support.

ordered in determining Laura's income.[8]   Because of the substantial monthly amount and lengthy duration of the spousal support obligation, we conclude it would be inequitable not to allow the deduction to John.   *See In re Marriage of Milton*, No. 00-0617, 2002 WL 1840858, at \*5 (Iowa Ct. App. Aug. 14, 2002) (modifying trial court decree to allow deduction of spousal support where child support payor was ordered to pay $1500 per month in spousal support for seven years); *In re Marriage of Russell*, 511 N.W.2d 890, 891–92 (Iowa Ct. App. 1993) (modifying trial court decree to allow deduction of spousal support where child support payor was ordered to pay $1000 per month in spousal support for five years); *In re Marriage of Allen*, 493 N.W.2d 273, 275 (Iowa Ct. App. 1992) (modifying trial court decree to allow deduction of spousal support where child support payor was ordered to pay $750 per month in spousal support for six years).   We conclude that not allowing the deduction would result in substantial injustice to John.   *See Lalone*, 469 N.W.2d at 697.   We therefore modify this provision, reducing John's net monthly income for child support purposes to $5124.85, and modify his child support obligation to $228.19 for three children, $185.63 for two children, and $105.86 for one child until his child support obligation ends.[9]

---

[8] The current child support guidelines provide that support is calculated based on the total net monthly income of the parties, then allocated based on the percentage of that income attributed to each.  Under the district court's order, the total income of the parties is inflated by $36,000, as the spousal support was added to Laura's income, but not subtracted from John's income.  Thus, the child support calculation is incorrect.

[9] We reached this calculation by using a gross annual income for John of $114,564.25 minus $36,000 ($78,564.25), allowing him a deduction for two children and filing as head of household, to reach a net monthly income of $5124.85; a gross annual income of $12,589.71 combined with $36,000 in spousal support for Laura ($48,589.71), allowing

*B. Life Insurance*

John also argues the district court erred in requiring him to maintain a $200,000 life insurance policy naming Laura as the beneficiary to secure his support obligations. He argues that any obligation for life insurance should end when his child support obligations end. The statement of requested relief John submitted to the district court had requested the court order him to designate Laura as the beneficiary of $100,000 of that life insurance policy. That requested relief makes no reference to whether he intended the life insurance as a property issue or security for support. At the commencement of the trial, John's counsel stated: "We are willing to stipulate that Mr. Lockard would maintain a policy of life insurance. The primary dispute here is how much."

A requirement to maintain life insurance to secure spousal support is permissible. *See Olson*, 705 N.W.2d at 318. The court may order the security of a life insurance policy where the party requesting the security has demonstrated a need and the cost of such a policy would not be unduly burdensome. *See id.*; *see also In re Marriage of Muow*, 561 N.W.2d 100, 102 (Iowa Ct. App. 1997). We find Laura has demonstrated a clear need for continued support based upon her limited employment experience, significant disability, and inability to support herself at a standard of living reasonably comparable to that enjoyed during the marriage. Although John's employment seems stable at the present time, on our

---

her a deduction for one child and filing as head of household, to reach a net monthly income of $3538.87; and including a $204 monthly credit to John for the cost of the children's health insurance premium. As noted above, John's pre-tax health benefits cafeteria plan was not included in the support calculations. This issue was conceded at trial, so we will not address it further.

de novo review we recognize the history of the family's financial difficulties justifies the district court's determination that some amount of life insurance to secure future support obligations is equitable.

After the trial of this case, the district court judge stated in open court: "In order to partially secure child and spousal support, I'm ordering that the father keep $200,000 of [life] insurance . . . naming the mother the beneficiary—so long as he is obligated on child support or spousal support." The written decree provides language to the same effect. At the time of trial, John was paying $186 per month for a $1.1 million term life insurance policy. Although the record does not provide us with the cost of $100,000 worth of life insurance, or the cost of a $200,000 policy, or what the premiums will be as John reaches insurance-age milestones, we cannot say the district court failed to do equity in its life insurance order.

Therefore, we affirm the provision requiring John to maintain a $200,000 policy naming Laura as the beneficiary to secure his spousal and child support obligations.

*C. Marital Home*

John argues the district court erred in not ordering the marital home be sold and the proceeds after costs divided between the parties. He claims that because the court awarded joint physical care of the children instead of awarding him sole physical care, his retention of the family home is not necessary for the children's stability. He further complains that based upon the financial obligations imposed on him by the court's decree, he cannot maintain the home

and its associated payments. Additionally, John disputes the court's determined value of the home and the value of the home's equity.

"Although our review is de novo, we ordinarily defer to the trial court when valuations are accompanied by supporting credibility findings or corroborating evidence." *Hansen*, 733 N.W.2d at 703. At trial, Laura submitted a formal and credible appraisal establishing the home's value at $183,000. John contends the home is worth only $178,000 due to hail damage[10] and other needed repairs. We agree with the district court's conclusion that the appraisal was reasonable, having considered the hail damage and necessary repairs, and value the home at $183,000. The home has an undisputed outstanding mortgage indebtedness of $167,104. The district court calculated the home's equity to be $15,896 at the time of trial, and ordered that amount be split one-half to each party—requiring John to make a payment to Laura for her share of the home's equity in the amount of $7948. Because the district court awarded the marital home to John, he may decide to sell it, but we decline to alter the district court's decree in this respect. Therefore, we affirm the district court's valuation of the marital home, its award of the home to John, and John's ordered payment of $7948 to Laura.

*D. Trial Attorney Fees*

John appeals the trial court's award of $5000 in attorney fees to Laura. "Ordinarily an award of attorney's fees rests in the sound discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion." *In re Marriage of Wessels,* 542 N.W.2d 486, 491 (Iowa 1995). "[A]n

---

[10] The district court awarded John the proceeds of any hail damage claim on the home.

award of attorney's fees depends upon the ability of the respective parties to pay, depending upon the financial circumstances and earnings of each." *Id.* We find no abuse of discretion here and affirm the district court's award of $5000 in attorney fees to Laura.

### E. Appellate Attorney Fees

Laura requests attorney fees for this appeal. Appellate attorney fees are not a matter of right, but rather rest in this court's sole discretion. *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). In determining whether to award attorney fees, we consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal. *Id.* Given the substantial disparity in earnings between the parties, we award Laura appellate attorney fees of $2000.

### IV. Conclusion

Upon our de novo review, we affirm the district court's decree (1) ordering John to pay permanent spousal support to Laura in the amount of $3000 per month; (2) requiring John to maintain $200,000 in life insurance naming Laura as the beneficiary to secure his spousal support and child support obligations; (3) awarding John the marital home valued at $183,000 and payment to Laura for her share of the home's equity in the amount of $7948; and (4) awarding Laura $5000 in trial attorney fees. We modify the district court's decree to deduct from John's income the spousal support paid to Laura for purposes of calculating his child support obligation, and remand for entry of an order consistent with our

recalculation of child support. We award Laura appellate attorney fees in the amount of $2000. Costs of the appeal are assessed to John.

**AFFIRMED AS MODIFIED AND REMANDED.**