# IN THE COURT OF APPEALS OF IOWA

No. 23-0962
Filed December 18, 2024

IN RE THE MARRIAGE OF JEREMY BAUGHN
AND KRISTI PACK

Upon the Petition of
JEREMY BAUGHN,
        Petitioner-Appellee,

And Concerning
KRISTI PACK,
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Floyd County, Gregg R. Rosenbladt,

Judge.


        A wife appeals the award of reimbursement spousal support to her husband

in the decree dissolving their marriage. **AFFIRMED AS MODIFIED.**


        John J. Wood of Beecher, Field, Walker, Morris, Hoffman & Johnson, P.C.,

Waterloo, for appellant.

        Todd P. Prichard and Caifang Deng of Walk, Prichard, Baresel & Murphy,

PC, Charles City, for appellee.


        Considered by Badding, P.J., and Langholz and Sandy, JJ.

**BADDING, Presiding Judge.**

Kristi Pack spent most of her short marriage to Jeremy Baughn pursuing a residency in veterinarian radiology. About a year after she completed the residency, the parties separated. In its decree dissolving the marriage, the district court awarded Jeremy $75,000 in reimbursement spousal support. Kristi appeals, claiming that Jeremy was not entitled to reimbursement spousal support because he did not make any economic sacrifices during the marriage that directly enhanced her future earning capacity. We agree and modify the dissolution decree to eliminate that award.

## I.    Background Facts and Proceedings

When Jeremy and Kristi first met in 2014, she was a major in the Air Force and working as a public health officer in Florida. Jeremy had just retired from the Army after more than twenty years of service. He worked in the same office as Kristi as an advocate for wounded soldiers. On top of his gross yearly salary of $70,000, Jeremy received $1800 per month from the military in retirement pay and $2100 in disability pay because of a right-arm injury.

In November, Kristi received a notice of separation from the military. Kristi had joined the Air Force in 2003, after she obtained a doctorate in veterinarian medicine and completed a large animal internship in Canada. Although she used her veterinarian degree as a public health officer, Kristi had not done any clinical work during her career with the military. She discussed her options with Jeremy and decided to pursue a residency in veterinary radiology. Kristi's sister was tenured faculty at the veterinary school in Canada where Kristi had completed her internship. So the couple decided that Kristi would complete her residency there.

With that plan in place, Jeremy and Kristi married in May 2015. Jeremy was thirty-nine years old, and Kristi was forty-two. Two months after their marriage, Kristi moved to Canada to start her residency program. Jeremy followed in January 2016 after he quit his job and sold his premarital home in Florida. Kristi's tuition for the residency program was covered by the military, which also provided her with a monthly housing allowance and a book stipend. And she was paid about $1500 per month for her work as a resident. Jeremy did not work while the couple was in Canada. Instead, he applied for and was granted social security disability benefits of $1800 per month. Around the same time, the Veterans' Administration reevaluated Jeremy's disability rating and determined he was one hundred percent disabled, which resulted in increased military disability pay.

Kristi's move to Canada sparked a protracted custody battle with her ex-husband in Florida. They shared care of their three children, who Kristi wanted to live with her in Canada. Kristi financed the litigation, and trips to see the children, with savings that she accumulated before the marriage, including about $65,000 or $70,000 in separation pay from the military, an $80,000 inheritance, a Roth IRA, and a Thrift Savings Plan.

Because of some personnel issues with the veterinary school in Canada, Kristi transferred to a residency program in Missouri in May 2016. The couple rented a house there, which Kristi helped pay for with her housing allowance from the military and the money she earned as a resident. Those earnings increased to between $1800 to $2000 per month as Kristi advanced in her residency. Jeremy obtained a part-time job at a sporting goods store, where he grossed about $24,000 per year. He also spent his time hunting and fishing, going on trips at

least every month, according to Kristi. Some of those trips were out of state—in Iowa, Virginia, and New York. Jeremy also made some trips to Florida to see his daughter from a previous relationship, while Kristi continued her custody battle with her ex-husband. Kristi testified that she financed many of Jeremy's trips, although he disputed that.

Kristi finished her residency in 2019, and the couple moved to Florida to be closer to their children. They bought a house in July for $539,900, with a $25,000 down payment. Kristi said that she made the down payment by dipping into her Roth IRA, Thrift Savings Plan, and money that she set aside for her children. Thinking this would be their "forever home," Kristi started renovating it, to the tune of roughly $100,000. She financed the renovation by again drawing from her Roth IRA and Thrift Savings Plan, along with credit cards and a personal loan through Discover. Jeremy said that he wasn't aware of all the renovations, but Kristi disagreed, testifying they made those decisions together.

Once they were in Florida, Kristi started working for a company her sister had started that provided teleradiology veterinarian services. Jeremy, who was not working, began going on hunting trips to Iowa through a veterans' hunting organization. In February 2020, he decided to stay in Iowa. Jeremy transferred the bills for the Florida house into Kristi's name and petitioned for divorce in April 2021. He bought a house in Iowa for $295,000 that he was fixing up "and turning it into, basically, a retreat for the veterans when they come to hunt." Meanwhile, Kristi maintained the home in Florida until it sold for $590,000. She moved to Colorado, where she continued to work for her sister's company as a teleradiology veterinarian. She was earning $135,550 at the time of trial and living in her sister's

home. Jeremy was unemployed and intended to remain that way, preferring to instead spend his time hunting and volunteering for different veterans' hunting organizations. His monthly benefits had increased to about $2000 in military retirement pay, $4000 in military disability pay, and $2100 in social security disability, for a gross annual total of $97,200—about half of which was nontaxable because of the military disability pay.

At the dissolution trial in March 2023, Jeremy asked for reimbursement spousal support "for his sacrifice and his support of [Kristi's] education." He also asked for an offset against the parties' credit card debt—which reached $125,000 during the marriage—based on his contributions to the household. Jeremy testified that those contributions included payments he made for the couple's homes, utilities, and vehicle insurance, as well as payments for his own vehicle, cell phone, and child support obligation. Kristi testified they both used the credit cards during the marriage, pointing out that before the marriage, she had no credit card debt. Since their separation, Kristi has paid $55,757 on the joint credit card debt. Jeremy has paid nothing.

In its dissolution decree, the district court found Kristi was credible, noting she was "very detailed and precise in her testimony" and "had a good grasp of details and timeframes" without speaking in generalities. Based on Kristi's testimony, the court determined that Jeremy's share of the parties' marital debt was $84,137, which included half of what Kristi had already paid on the credit card debt, half of the remaining credit card debt, and half of what the couple borrowed from Kristi's minor children's accounts. The court rejected Jeremy's request for a credit against that debt for his contributions to the household because "these were

debts and expenses which occurred during the marriage" that were also "offset somewhat, if not entirely, by the funds put into the Florida home remodeling by [Kristi]." Yet the court concluded Jeremy was entitled to $75,000 in reimbursement spousal support from Kristi because the "advanced training she received during the marriage has resulted in increased income for her, and Jeremy did help contribute so the advanced education could happen." The court offset that amount from what Jeremy owed to Kristi for his share of the marital debt, which left Jeremy owing Kristi a balance of $9137.

Kristi appeals, claiming the court erred in awarding Jeremy reimbursement spousal support. She asks that we modify the dissolution decree by eliminating that award and ordering Jeremy to make an equalization payment of $84,137. Jeremy counters that the court "struck an equitable decision" in awarding him reimbursement support "and counting that against [his] share of the marital debt."

## II.     Standard of Review

We review spousal support awards de novo. *In re Marriage of Pazhoor*, 971 N.W.2d 530, 537 (Iowa 2022). Although our review is de novo, we "give the district court considerable latitude, and will only disturb the award when there has been a failure to do equity." *Id.* (cleaned up).

## III.    Analysis

A decision about whether to award spousal support "is a matter of discretion and not a matter of right." *Id.* (citation omitted). It depends on the "particular facts and circumstances of each case," as shaped by the criteria listed in Iowa Code section 598.21A(1) (2021). *Id.* "In applying these statutory criteria, our precedents have recognized four forms of spousal support deemed equitable: traditional,

reimbursement, rehabilitative, and transitional." *In re Marriage of Sokol*, 985 N.W.2d 177, 185 (Iowa 2023). The only category at issue here is reimbursement.

Reimbursement spousal support "is predicated upon economic sacrifices made by one spouse during the marriage that directly enhance the future earning capacity of the other." *Pazhoor*, 971 N.W.2d at 544 (quoting *In re Marriage of Francis*, 442 N.W.2d 59, 62 (Iowa 1989)); *see also* Iowa Code § 598.21A(1)(e). This type of spousal support "is designed to give the 'supporting' spouse a stake in the 'student' spouse's future earning capacity, in exchange for recognizable contributions to the source of that income—the student's advanced education." *Francis*, 442 N.W.2d at 63. An award of reimbursement support is generally appropriate in "marriages of short duration which are devoted almost entirely to the educational advancement of one spouse and yield the accumulation of few tangible assets." *Id.* at 62; *see also* Iowa Code § 598.21A(1)(a), (c). Jeremy seizes on this last consideration in arguing this "case hits the marks for the award of reimbursement [spousal support] quite squarely." We disagree.

While this was a short marriage with few assets, Kristi correctly points out that Jeremy did not make any economic sacrifices in furtherance of her advanced degree. Although the district court found that Jeremy made sacrifices for Kristi's education by moving to "Canada and Missouri [with] related travel and moving expenses," the record shows the military paid for the couple's move to Canada, and Kristi paid for their move to Missouri, as well as for many of their expenses in traveling to see their children. True, Jeremy quit his job as a veterans' advocate before moving to Canada for the first year of Kristi's residency program. But he was already retired from the military by then. And Jeremy never returned to work

full-time. *See In re Marriage of Coffman*, No. 12-1191, 2013 WL 99331, at *3 (Iowa Ct. App. Jan. 9, 2013) (rejecting claim for reimbursement support where wife "presented no evidence of her likely income or professional status if she had not made the moves"). Instead, he applied for social security disability and, aside from his part-time job in Missouri, spent his time hunting, fishing, and helping other veterans. *Cf. In re Marriage of Singer*, No. 02-1770, 2003 WL 22807034, at *3 (Iowa Ct. App. Nov. 26, 2003) (finding spouse entitled to reimbursement support "for her economic sacrifices in the form of lost tenure in her teaching career, lost educational opportunities, and lost retirement benefits, all of which directly enhanced [her spouse's] future earning capacity"); *In re Marriage of Showers*, No. 99-1912, 2000 WL 1588016, at *4 (Iowa Ct. App. Oct. 25, 2000) (concluding reimbursement support was appropriate for a wife who sacrificed "the opportunity to have stable, long-term employment which would provide her with such benefits as insurance, retirement[,] and seniority"); *accord In re Marriage of Horstmann*, 263 N.W.2d 885, 890 (Iowa 1978) (awarding reimbursement support where a wife "sacrificed her education to have the couple's child and to support the family" while [the husband] went to school").

As for Jeremy's economic contributions to Kristi's advanced degree, while both parties agree that he "did not directly finance or make economic contribution to [her] education expenses," Jeremy contends that he did contribute to the parties' household with his income. *Cf. Francis*, 442 N.W.2d at 66 (noting "courts in Iowa are not confined to reimbursing supporting spouses solely for the expense of the advanced degree itself"). He testified: "My support was in the means of paying for the rent and utilities and vehicle payment, my vehicle payment, my child support

and all that stuff and taking care of the household . . . ." But Kristi was contributing to those expenses too. *See In re Marriage of Lalone*, 469 N.W.2d 695, 697 (Iowa 1991) (denying claim for reimbursement support where both spouses "contributed to the success of the family unit"). She received a housing allowance from the military which, in her final year of residency, was $1149 per month, plus her resident salary of $1800 to $2000 per month. Kristi testified that she transferred $1000 to Jeremy every month and paid other bills from her savings. While some of Kristi's assets went towards what Jeremy describes as her "costly custody dispute," that is not a relevant consideration in determining whether an award of reimbursement support is appropriate. *See, e.g.*, *In re Marriage of Gutcher*, No. 17-0593, 2018 WL 5292082, at *4 (Iowa Ct. App. Nov. 7, 2018) (noting reimbursement support "cannot be applied so broadly" as to compensate a spouse for financial contributions to the marriage outside the professional degree context).

In the end, the goal in awarding spousal support is to do equity. *See In re Marriage of Mills*, 983 N.W.2d 61, 71 (Iowa 2022). Under the facts of this case, we find the court's award of reimbursement spousal support fails to do equity between these parties. We accordingly modify the decree to remove that award and its offset against Jeremy's share of the marital debt. Our modification leaves Jeremy owing Kristi $84,137, which we order him to pay within one year after procedendo issues or judgment will enter against him for that amount, with interest at the statutory rate. The costs of this appeal are assessed against Jeremy.

**AFFIRMED AS MODIFIED.**