**In re the MARRIAGE OF Marilyn Louise BENSON and Stephen Paul Benson.**

**Upon the Petition of Marilyn Louise Benson, Petitioner–Appellant,**

**And Concerning Stephen Paul Benson, Respondent–Appellee.**

No. 91–1977.

Court of Appeals of Iowa.

Dec. 29, 1992.

Roger J. Hudson and Michael E. Marshall of Smith, Schneider, Stiles, Mumford, Schrage, Zurek, Wimer & Hudson, P.C., Des Moines, for petitioner-appellant.

Edward J. Kross of Shaff, Van Scoy, Sivright & Kross, P.C., Clinton, for respondent-appellee.

Considered by DONIELSON, P.J., and SCHLEGEL and SACKETT, JJ.

SACKETT, Judge.

Petitioner-appellant Marilyn Louise Benson challenges the economic provision in the decree dissolving her marriage to respondent-appellee Stephen Paul Benson. We affirm in all respects except we modify to award Marilyn $300 a month in alimony.

Marilyn and Stephen were married in 1973. Three children were born to the marriage; Stephen in 1974, William in 1977, and Robert in 1979. Marilyn and Stephen also adopted two handicapped children, Harold born in 1978, and Hope born in 1986. The adoptions were considered subsidized and the adopted children, because of their disabilities and the family income, receive supplemental security income. A sixth child lived in their home. This child who was born in 1988 came to their home in August of 1989, and in 1990, the child was placed in the guardianship of Marilyn and Stephen. Stephen has resigned his guardianship. Apparently neither Stephen nor Marilyn has received any support for this child.

The five children that were born to or adopted by Marilyn and Stephen were placed in the joint legal custody of Marilyn and Stephen. Stephen was designated the primary physical care taker for Stephen and the other four children were placed in Marilyn's physical care. The sixth child remains in Marilyn's care.

The trial court awarded Marilyn $1.00 a month in alimony commencing December 1, 1991. The trial court ordered Stephen to pay child support of $583 for the four children in Marilyn's care. Marilyn was not ordered to pay Stephen child support for the child in his care. Stephen was ordered to maintain health and hospital insurance for the children and pay all deductibles. All other medical expenses including dental, orthodontic, and optical were to be the responsibility of the parties equally. The trial court divided the property and ordered each party to pay his or her own attorney fees.

■ Marilyn first contends the trial court decision to only award her $1.00 in alimony is not equitable. Marilyn has not worked outside the home since she was pregnant with the parties' first child. She is thirty-seven years old. Marilyn has health problems; she suffered from bilateral Meniere's disease that has caused her to lose fifty percent of the hearing in both her ears and causes her to suffer from vertigo, nausea and vomiting that can only be stopped by total sedation. She is continually on medication to control these symptoms. The two children the parties adopted have special needs that would make employment outside the home difficult, if not totally impossible, for Marilyn. Hope, the adopted child born in 1986, has hydrocephalus with a shunt; she is a quadriplegic, with bronchopulmonary dysplasia, chronic asthma, seizure disorder, and cerebral palsy. She is wheelchair-bound, has no eyesight, has a tracheostomy, and has a gastrostomy with nissen fundoplication. Harold, the adopted child born in 1978, is mentally retarded and, although he is 12 years old, functions at about a 4 to 5½ year level.

The children in Marilyn's care born to the parties also have problems. William suffers an attention deficit disorder that requires him to be on Ritalin therapy during the school year. Robert has allergies and asthma.

We look to the criteria of Iowa Code section 598.21(3). This is a 17-year marriage. Marilyn is not in good health. Marilyn has received a modest property award. She has few vocational skills. She has incredible responsibilities for the children in her physical care and there is a very minimal chance she will be employed in the future. *See In re Marriage of Griffin*, 356 N.W.2d 606, 609 (Iowa App.1984). Stephen

has an annual income in excess of $20,000 a year.

We agree that the circumstances of this case dictate Marilyn receive alimony in a greater amount than fixed by the trial court. We award her $300 a month alimony.

■ Marilyn contends the trial court did not award her sufficient child support. In determining child support, we look to the supreme court child support guidelines. See In re Marriage of Cossel, 487 N.W.2d 679, 680–81 (Iowa App.1992). There is a rebuttable presumption that the amount of the child support which would result from the application of the guidelines is correct. See In re Marriage of Powell, 474 N.W.2d 531, 533 (Iowa 1991). Application of the guidelines is mandatory unless the court makes written findings adjustment is necessary. See In re Marriage of Ludwig, 478 N.W.2d 416, 419 (Iowa App.1991); Iowa Dep't of Human Servs. ex rel. Gonzales v. Gable, 474 N.W.2d 581, 582 (Iowa App.1991); In re Marriage of Toedter, 473 N.W.2d 233, 235 (Iowa App.1991).

■ There are a number of factors in this case that render a strict application of the guidelines difficult. We share some of the frustrations the trial court obviously experienced in attempting to fix a fair child support figure. While we would have arrived at the result in a different manner than the trial court, we do not find in looking at all the factors of this case that the trial court abused its discretion in arriving at the child support figure it did. See In re Marriage of Lalone, 469 N.W.2d 695, 697 (Iowa 1991). We do, however, address the challenges Marilyn has made to the trial court's computations. Child support should first be computed according to the guidelines.

■ Marilyn first contends the trial court incorrectly determined Stephen's "net monthly income" as defined by the guidelines and her "net monthly income" as defined by the guidelines. Application of child support guidelines first involves determination of the "net monthly income" of

each parent. See Lalone, 469 N.W.2d at 696.

Stephen is employed by a family owned business. The trial court determined Stephen's "net monthly income" to be $1,457 a month. This is the amount of the paycheck Stephen receives each month. Marilyn contends the trial court should have increased Stephen's "net monthly income" for purposes of applying the child support guidelines by certain benefits she claims he receives by reason of his employment. Stephen works for Benson Oil Company, a company Stephen owns with his mother. Benson Oil's business is the sale of petroleum products, motor oils and the installation and servicing of furnaces and air conditioning. The company owns a service station location that had underground tanks and possible contamination that resulted in an expenditure of approximately $90,000, in the past year. The company had to borrow money to pay the cost. The oil company was reported as valueless on both parties' financial statements. In the past, the Benson Oil Company has paid Stephen's motor vehicle expenses, provided him with Christmas Club benefits, paid his health insurance of nearly $9,000 a year, and made some utility payments including his basic phone service and has given him unsalable heating oil. At the time of the trial, the company was paying $290 a month on a debt Stephen was ordered to assume under the dissolution decree. The company also paid Stephen's basic telephone charges because he had to take evening and weekend calls at home.

■ With the substantial environmental payment Benson Oil has been required to make, we cannot determine that payments made in prior years will be available to Stephen. The cost of providing this family with health and hospital insurance is understandingly substantial. The premium is nearly $9,000 annually and is paid by the business in addition to Stephen's salary. Stephen, through the business, provides this benefit to the family in addition to child support. We have modified the decree to award Marilyn alimony of $300 a month. This is long-term alimony and it is

proper to deduct alimony from Stephen's wages and add it to Marilyn's income in determining child support. *See Lalone,* 469 N.W.2d at 697. With this adjustment, we find the "net income" the trial court found to be Stephen's to be within a permissible range.

■ Marilyn's next complaint is the trial court should not have considered aid to dependent families, supplemental security income paid for the two adopted children, and social security received by Harold due to his birth father's disability as income to her for the purpose of determining child support. We agree with Marilyn that any part of these payments considered public assistance should not be income to her for the purpose of applying the child support guidelines. We recognize, too, that the payments may change based on Stephen's child support obligation. To qualify for supplemental social security income benefits, an applicant for benefits must show that his or her income, both earned and unearned, falls below statutory maximum. *See Lapin v. Mathews,* 422 F.Supp. 1089, 1090 (1976). When Congress defined unearned income as "support and maintenance furnished in cash or in kind," it contemplated that a reduced entitlement would be paid to those supplemental security income recipients whose essential needs were being satisfied by other means. *Antonioli v. Harris,* 624 F.2d 78, 80 (1980). Section 1382a defines income as both earned and unearned income and includes support payments in the definition of unearned income. *See* 42 U.S.C.A. § 1382a(a)(2)(E) (West 1992).

The question is whether supplemental security income is a public assistance benefit. Only public assistance payments are specifically excluded as income under the supreme court child support guidelines. *See In re Marriage of Lee,* 486 N.W.2d 302, 305 (Iowa 1992). Supplemental security income is provided for under 42 U.S.C.A. section 1382a. It is a social security program providing benefits to aged, blind and disabled individuals who have income and resources below certain statutory amounts. *See Termini v. Califano,* 611 F.2d 367, 368

(1979). It is in the nature of a welfare program. *See Hudsinus v. Heckler,* 587 F.Supp. 814, 823 (1984). Disabled persons may qualify both for social security disability insurance, which depends on the person's contributions and insured status, and for supplemental security income, which provides a minimum income based on need. *See Dion v. Secretary of Health and Human Servs.,* 823 F.2d 669, 670 (1987). There is no insured status requirement for receipt of supplemental security income under section 1382. *See Kozaczka v. Schweiker,* 520 F.Supp. 1189, 1193 (1981). The purpose of supplemental security income is to assure recipients' income is maintained at a level viewed by Congress as the minimum necessary for the subsistence of that individual. *Whaley v. Schweiker,* 663 F.2d 871, 873 (1981). The supplemental security income program was enacted in part to relieve state and local welfare burdens. *See City of New York v. Heckler,* 578 F.Supp. 1109, 1121 (1984), *aff'd,* 742 F.2d 729 (1984).

■ Clearly, supplemental security income is a public assistance similar to aid to dependent families. We consider supplemental security income payments to be public assistance under the definition of public assistance under the guidelines as opposed to veterans' disability benefits, social security disability or retirement payments and workers' compensation which are properly considered as income in determining child support. *See Lee,* 486 N.W.2d at 305; *In re Marriage of Howell,* 434 N.W.2d 629, 633 (Iowa 1989); *In re Marriage of Stuart,* 252 N.W.2d 462, 464 (Iowa 1977); *In re Marriage of Bales,* 380 N.W.2d 754, 755 (Iowa App.1985).

We do not consider supplemental security income for the two adopted children as Marilyn's "net monthly" income for the purpose of applying the child support guidelines both because we consider supplemental security income as public assistance as defined by the guidelines and also because we recognize the amount of supplemental security income received, if any, will be affected by the child support that Stephen is ordered to pay. This case is

clearly distinguishable from *In re Marriage of Davis*, 462 N.W.2d 703 (Iowa App. 1990). In *Davis* the issue was continued support of a disabled adult child. We determined the child support guidelines promulgated by the supreme court were not intended to and did not apply to cases involving adult-dependent children. *See Davis*, 462 N.W.2d at 705.

■ The aid to dependent families Marilyn receives is a public assistance payment and is specifically excluded in the definition of income under the guidelines. See *Lee* 486 N.W.2d at 305.

■ We do not consider social security payments received by Harold as a result of the disability of his birth father as income to Marilyn. We find Marilyn's "net monthly income" to be $300, the amount of the alimony she is to receive from Stephen.

■ Marilyn next contends the trial court should not have fixed child support for four children. She contends the trial court should only have fixed child support for the two natural born children in her care. She argues that because the trial court fixed child support for four children, Hope and Harold will lose their eligibility for supplemental security income grants. The question is should we relieve Stephen of his obligation to pay child support for the two disabled children to enable Marilyn to continue to receive supplemental security income for the two disabled children. Stephen has an obligation to support all of the children. *See Gable*, 474 N.W.2d at 583; *In re Marriage of Lowry*, 452 N.W.2d 464, 465 (Iowa App.1989). Like aid to dependent families, supplemental security income is based on need and anticipates that it will only come into play if minor children do not have sufficient support from their parents. We will not structure child support so as to make families eligible for either programs. Eligibility for these programs should be determined after the courts have fixed reasonable child support based on the noncustodial parent's ability to pay.

■ For the purpose of applying the guidelines, we find Marilyn has $300 net monthly income and Stephen has net monthly income of $1,500 a month. The amount due Marilyn for four children under this calculation would be $738; and Marilyn's obligation for child support for the child in Stephen's care would be, according to the guidelines, "within the sound discretion of the court." Stephen has physical care of the oldest child and has the sole financial responsibility for this child, a child of this marriage. Harold, one of the children in Marilyn's care, is receiving $168 in social security benefits. Harold's social security benefit is not affected by child support Stephen will pay. Harold's needs, therefore, are not as great as the other children. We consider the age of the child in Stephen's care; the obligation of Marilyn to contribute to the support of the child in Stephen's care; the fact that Harold, one of the children in Marilyn's care, receives social security; and the fact that there are subsidized services available for the two adopted children in Marilyn's care. Looking to these factors, we find the trial court did not abuse its discretion in setting the child support payable to Marilyn at $583 monthly. We affirm on this issue.

■ We recognize Marilyn is caring for another child in her home without financial assistance from the child's parents. While this is a charitable action on Marilyn's part, we do not consider these responsibilities she has assumed in reviewing the support issue. The trial court may extend such duty of support only to the natural or adopted children of the parties. *See In re Marriage of Carney*, 206 N.W.2d 107, 112 (Iowa 1973). The best interests of the children in Marilyn's care demand she seek financial assistance from the parents of the child under her guardianship.

■ Marilyn also challenges the property division made by the trial court. Marilyn contends the division should be modified to give her an additional payment from Stephen of $1,178 for nursing care she paid for Hope before the dissolution. The trial court allocated $3,883 in net value of property and debt to Stephen and $10,000 in property to Marilyn. The trial court determined the parties' home had a value of

$38,000 with a mortgage of $18,730. If Stephen keeps the house, he was to give Marilyn $8,713.50, which would give her $18,713.50. If the house is sold, Stephen is to receive the first $3,058 of the proceeds and the balance is to be divided equally. We find no inequity in this division. *See In re Marriage of Bare*, 203 N.W.2d 551, 554 (Iowa 1973).

Marilyn contends the trial court should have ordered Stephen to pay trial attorney fees and we should order him to pay attorney fees on appeal. Both parties have received property and both parties have responsibilities for the child or children in their care. Stephen has been ordered to assume all the parties' other debt. Iowa trial courts have considerable discretion in awarding attorney fees. *See In re Marriage of Giles*, 338 N.W.2d 544, 546 (Iowa App.1983). To overturn an award the complaining party must show that the trial court abused its discretion. *Id.* Awards of attorney fees must be for fair and reasonable amounts, *see In re Marriage of Willcoxson*, 250 N.W.2d 425, 427 (Iowa 1977), and based on the parties' respective abilities to pay. *See In re Marriage of Lattig*, 318 N.W.2d 811, 817 (Iowa App.1982). An award of attorney fees is not a matter of right, but rests within the court's discretion and the parties' financial positions. *See In re Marriage of Kern*, 408 N.W.2d 387, 390 (Iowa App.1987). We are to consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal. *See In re Marriage of Castle*, 312 N.W.2d 147, 150 (Iowa App.1981). The trial court did not abuse its discretion in refusing to award attorney fees at the trial court level. Stephen contends Marilyn inserted unnecessary pages in the appendix and she should be charged with the cost of printing those pages he contends were not necessary. Marilyn did not designate unnecessary material be inserted in the appendix.

Marilyn has requested attorney fees on appeal. We order that Stephen pay $500 towards her attorney fees.

AFFIRMED IN PART; MODIFIED IN PART.