**In re the MARRIAGE OF David William CLARK, Jr. and Linda Diane Clark.**

Upon the Petition of

**David William Clark, Jr., Petitioner–Appellee,**

And concerning

**Linda Diane Clark, Respondent–Appellant.**

**In re the MARRIAGE OF David William CLARK, Jr. and Linda Diane Clark.**

Upon the Petition of

**Linda Diane Clark, Petitioner–Appellant,**

And concerning

**David William Clark, Jr., Respondent–Appellee.**

No. 96–2079.

Court of Appeals of Iowa.

Feb. 25, 1998.

Randal J. Giannetto of Mowry, Irvine, Giannetto & Moon, Marshalltown, for appellant.

Patrick L. Wilson, Marshalltown, for appellee.

CADY, C.J., and SACKETT, and HUITINK, JJ.

SACKETT, Judge.

Appellant Linda Diane Clark appeals challenging the economic provisions of the decree dissolving her twenty-eight-year marriage to appellee David William Clark, Jr. We affirm as modified.

David, who was fifty-one at the time of the dissolution hearing, and Linda, who was forty-six, have three adult children. Their oldest child, Crystal, who was twenty-seven at the time of the hearing, was injured as a child and suffers with cerebral palsy. Crystal lives with her mother and qualifies for supplemental security income benefits.

Linda was a telephone operator at the time of the marriage. During the marriage, Linda assumed the majority of the responsibility for the children and home. She worked outside the home at times, but was not employed outside the home at the time of the dissolution. David was the primary wage earner. David currently is employed by the Union Pacific Railroad. He has an annual salary before taxes of about $33,000.

The trial court divided the property so as to allocate approximately $60,000 each to David and Linda. The court ordered David to pay Linda alimony of $350 per month for seventy-two months and to pay $350 per month for Crystal's support for twelve months.

Linda first challenges the property division. Included in the $60,000 in equities awarded to Linda was the personal residence of the parties. The home had no debt and was valued at the time of the dissolution at $25,000. Linda contends this home should have been set aside to her prior to dividing the other property. She purchased the home from her father in 1970 for one dollar. She contends it should have been set aside to her because it is gifted property. The home, held in joint ownership, was given to Linda because she cared for her father during their marriage. Linda took title to the house early in the marriage. The house has been used as the parties' personal residence and there have been substantial improvements to the home as well as considerable outlays for maintenance. During the period Linda cared for her father, David provided the financial support for the family. Though Linda advances we should not consider improvements made to the house with David's income, we disagree.

■ Generally, gifts or inheritances received by a party during the marriage are not subject to a property division unless the failure to do so would be inequitable to the other party. *In re Marriage of Muelhaupt,* 439 N.W.2d 656, 659 (Iowa 1989); *In re Marriage of Oler,* 451 N.W.2d 9, 10–11 (Iowa App.1989); Iowa Code § 598.21(2). There are a variety of factors a court must weigh to determine how such property should be treated. *Muelhaupt,* 439 N.W.2d at 659; *In re Marriage of Vrban,* 359 N.W.2d 420, 427 (Iowa 1984). The length of the marriage is an important factor in considering when gifted or inherited property should be divided. *Muelhaupt,* 439 N.W.2d at 659. The ultimate question is whether the property distribution was equitable. The distribution of the property of the parties should be that which is equitable under the circumstances after consideration of the criteria codified in Iowa Code section 598.21(1). *In re Marriage of Estlund,* 344 N.W.2d 276, 280 (Iowa App. 1983). We consider the substantial monies advanced during the marriage for improvements to and maintenance of the home, as well as the fact David supported the family

financially during the time Linda cared for her father, in finding the division made by the trial court was equitable. We affirm the trial court's decision on this issue.

■ Linda next contends the trial court failed to order sufficient support for Crystal. Crystal was receiving $313 per month in supplemental security income benefits at the time of trial. The amount was reduced to $140 per month during the period Crystal received support from her father. Crystal has held jobs, drives a car, cares for her own personal needs, has a reasonable understanding of current events, and is a registered voter. She lives with Linda. David advocates she should seek an independent living arrangement. There is a sheltered workshop in the area where Crystal could find work. Crystal testified she just does not choose to do so.

Section 598.1(6) (1995) provides that a divorced parent can have a child support obligation for a disabled child beyond his or her eighteenth birthday. *See also In re Marriage of Hansen,* 514 N.W.2d 109, 111 (Iowa App.1994). Iowa law imposes no comparable support requirement on parents still married to each other who have a disabled adult child.[1]

Through supplemental security income benefits, the federal government has structured, under 42 U.S.C.A. section 1382(a), a social security program providing benefits to disabled individuals, among others whose income resources are below certain statutory amounts. *See Termini v. Califano,* 611 F.2d 367, 368 (2nd Cir.1979). The purpose of the program for supplemental security income is to assure a recipient's income is maintained at a level viewed by Congress as the minimum necessary for the subsistence of that individual. *Whaley v. Schweiker,* 663 F.2d 871, 873 (9th Cir.1981). The program was directed to relieve state and local welfare burdens. *See City of New York v. Heckler,* 578 F.Supp. 1109, 1121 (E.D.N.Y.1984), *aff'd,* 742 F.2d 729 (2nd Cir.1984).

In *In re Marriage of Benson,* 495 N.W.2d 777 (Iowa App.1992), we addressed the limited issue of whether supplemental security

---

**1.** No constitutional challenge to this provision is    made in this case.

income paid for two adopted children should be considered as "net monthly" income of the custodial mother for the purpose of applying the child support guidelines. *Id.* at 781. We considered it under those facts as public assistance benefits specifically excluded as income under the Supreme Court Child Support Guidelines. *Id.*

We found the issue in *Benson* distinguishable from the issue of support of a disabled adult child addressed in *In re Marriage of Davis*, 462 N.W.2d 703 (Iowa App.1990).

Crystal qualifies for a benefit sufficient to maintain her at a subsistence level. The benefit will be reduced if Crystal is receiving support from other sources. *See Lapin v. Mathews*, 422 F.Supp. 1089, 1091 (D.D.C. 1976). To qualify for supplemental security income benefits, an applicant must show her income both earned and unearned falls below statutory maximums. *Id.* Congress defined unearned income as "support and maintenance furnished in cash or in kind." Section 1382a includes support payments in the definition of unearned income. *See* 42 U.S.C.A. § 1382a(a)(2)(E).

In *Hansen,* we addressed factors to consider in determining support obligations in a dissolution for disabled adult children. We said the support obligation for such a child beyond her eighteenth birthday is based on her need for assistance and her parents' ability to contribute to this need. *Hansen,* 514 N.W.2d at 112. We further said, "Not all children with disabilities necessarily qualify for support beyond their eighteenth birthday." *Id.* We noted in assessing the needs of a disabled child beyond her eighteenth birthday we looked at her ability to be gainfully employed as well as her receipt of benefits from other sources. *Id.; see also Davis,* 462 N.W.2d at 705.

Following the dictates of *Hansen,* we consider Crystal's receipt of supplemental security income benefits in assessing her need for support. We find no valid reason not to accept the trial court's finding on this issue. We reject Linda's claim there should be additional support.

Linda's last claim is she should have been awarded additional alimony. The trial court awarded her alimony of $350 per month for seventy-two months. Linda contends she should have $750 per month for fifteen years and rehabilitative alimony of $5000.

In assessing Linda's claim for alimony, we look at all the factors of section 598.21(3) and applicable case law. *See In re Marriage of Francis,* 442 N.W.2d 59, 62 (Iowa 1989); *In re Marriage of Janssen,* 348 N.W.2d 251, 253–54 (Iowa 1984); *In re Marriage of Passick,* 375 N.W.2d 284, 286 (Iowa App.1985).

█ Linda during the marriage has obtained limited education at the area college and has held minimal employment outside the home. She has little F.I.C.A. coverage in her own right and has few retirement benefits, though the length of marriage will enable her to draw on David's account. *See In re Marriage of Miller,* 475 N.W.2d 675, 677 (Iowa App.1991). Linda is in good health. She is capable of being gainfully employed, although her job prospects are limited by her long absence from the job market. We modify to increase her alimony to $700 per month payable for seventy-two months. In all other respects, we affirm the trial court.

█ Linda contends she should be awarded appellate attorney fees. In determining whether to award appellate attorney fees we consider, among other things, the needs of the party making the request and the ability of the other party to pay. *See In re Marriage of Kurtt,* 561 N.W.2d 385, 389 (Iowa App.1997). We award Linda $1000 in appellate attorney fees.

**AFFIRMED AS MODIFIED.**

HUITINK, J., concurs.

CADY, C.J., dissents.

CADY, Chief Judge (dissenting).

I respectfully dissent. I would award permanent child support of $200 per month. Crystal is disabled and, although an adult, remains dependant on the parties as a result of her disability. Linda has chosen to provide Crystal the care she requires. We should respect Linda's decision to provide this care, and require David to assist as well.

Although Crystal receives public assistance as a result of her disability, this assistance

should not eliminate David's legal obligation to support an adult dependent child under Iowa Code section 598.1(6) (1995). We do not structure support so as to make families eligible for public assistance. *See In re Marriage of Benson,* 495 N.W.2d 777, 782 (Iowa App.1992). Likewise, we should not eliminate a support obligation merely because it will decrease the amount of public assistance Crystal will receive and provide little net benefit to her.