# IN THE COURT OF APPEALS OF IOWA

No. 17-1104
Filed November 21, 2018

IN RE THE MARRIAGE OF ANNE ELIZABETH GRASK
AND WILLIAM THOMAS GRASK

Upon the Petition of
**ANNE ELIZABETH GRASK,**
        Petitioner-Appellee,

**And Concerning**
**WILLIAM THOMAS GRASK,**
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Polk County, Mary Pat Gunderson,

Judge.


        William Grask appeals from the economic provisions of the decree

dissolving his marriage to Anne Grask. **AFFIRMED AS MODIFIED.**


        Jaclyn M. Zimmerman of Grefe & Sidney, P.L.C., Des Moines, for appellant.

        Mark R. Hinshaw of The Law Offices of Mark R. Hinshaw, West Des Moines,

for appellee.


        Heard by Danilson, C.J., and Potterfield and Doyle, JJ.

**DOYLE, Judge.**

William (Bill) Grask appeals from the economic provisions of the decree dissolving his marriage to Anne Grask. He contends the property distribution and spousal-support award are inequitable. He also challenges the child-support calculation and an award of $40,000 in trial attorney fees to Anne.

**I. Background Facts and Proceedings.**

Anne and Bill married in 1990. They have three children; two of the children have reached the age of majority, and the youngest child was ten years old at the time of trial. On April 24, 2015, Anne filed a petition seeking to dissolve the marriage. Following trial, the district court entered the decree dissolving their marriage in June 2017.

Anne was fifty-two years old at the time of trial. She has a math degree and worked as a teacher in the early years of the marriage. She was earning approximately $18,500 per year when she stopped working in 2003, though she earned as much as $25,000 per year while working at a community college in Germany between 1990 and 1995. Anne was unemployed at the time of trial, but considering her "age, skill set, education level, and the fact she has been out of the work place for over fourteen years," the district court determined her earning capacity to be $25,000 per year.

Bill was fifty-three years old at the time of trial. He is a dentist and purchased Mercy Dental Clinic when the parties moved to Iowa in 1997. He is the sole owner of and the only dentist on staff at the clinic. After averaging Bill's earnings from 2011 through 2015, the court found his gross annual income to be $173,515. The parties agreed the practice was worth $300,000 at the time of trial.

In the months leading up to Anne filing the dissolution petition, Bill withdrew significant sums of money from his IRA, which he used to pay a gambling debt. The value of the IRA decreased from approximately $132,000 on December 31, 2014, to approximately $5000 on December 31, 2015. Bill admitted he took early distributions of $51,000 on January 27, 2015 and $55,250 on April 20, 2015 to pay off gambling debts. In April and May of 2015, Bill testified that he withdrew $94,000 from a Community Choice Credit Union account[1] to pay a gambling debt that was "close to [$100,000]." Bill failed to disclose the existence of the Community Choice Credit Union account until the first day of trial. Between 2014 and 2016, Bill also withdrew money from his two youngest children's college savings accounts in the amount of $21,500 and $20,000 respectively, which he claimed he used to pay the oldest child's college tuition. However, the district court found his explanation "suspect" in light of "the seriousness of his gambling debt," the large withdrawals from his retirement account, and his failure to disclose the existence of the Community Choice Credit Union account before trial.

The parties agreed to and the district court awarded joint legal custody of their minor child with Anne acting as the child's physical caretaker subject to visitation with Bill. The court ordered Bill to pay Anne $1313 per month in child support. The court also ordered Bill to pay Anne $3000 per month in spousal support until Anne's death or remarriage.

With regard to the marital property, the court awarded each party their sole personal property and made each responsible for their debts. It ordered the parties

---

[1] Credit union records show $95,000 was deposited into the account during this same period.

to sell the marital home and divide the net proceeds of the sale equally, but it granted Anne exclusive possession of the property until its sale. It later enlarged the decree to make Bill responsible for the mortgage payments pending the property's sale. The court awarded the dental practice to Bill but ordered Bill to pay Anne $150,000. It also ordered Bill to pay $40,000 of Anne's trial attorney fees.

The court also enlarged the decree to find that Bill dissipated assets by taking early withdrawals from his IRA account. It found Anne was entitled to half the amount of the dissipated assets and ordered Bill to pay Anne an additional $53,125. It also transferred the children's college savings accounts to Anne.

**II. Scope and Standard of Review.**

We review dissolution proceedings de novo. *See In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). We examine the entire record and adjudicate the issues anew. *See id.* Although we are not bound by the district court's factual findings, we give them weight, especially if they concern witness credibility. *See id.*

**III. Property Distribution.**

Bill complains the properly distribution is inequitable in several respects. In addition to challenging the overall property distribution, Bill challenges various decree provisions, as well as the court's finding and remedy concerning his dissipation of marital assets.

When the court dissolves a marriage, it must divide the parties' property equitably. *See* Iowa Code § 598.21(1) (2015). In determining what division is equitable, the court must consider the factors set forth in section 598.21(5). The

trial court has considerable latitude in making this determination, and we only reverse if "there has been a failure to do equity." *See In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005).

"An equitable division does not necessarily mean an equal division of each asset." *In re Marriage of Hazen*, 778 N.W.2d 55, 59 (Iowa Ct. App. 2009). The question is what is fair and equitable in each circumstance. *See id.* "The partners in the marriage are entitled to a just and equitable share of the property accumulated through their joint efforts." *Id.*

**A. Tax liability.**

Bill complains about the decree's provision ordering him to be responsible for the parties' 2015 tax liability. He argues that Anne shared in the benefit of his earnings and should likewise be required to share responsibility for the state and federal taxes owed as a result of those earnings. We agree. Because both benefited from Bill's income, it is equitable to make require each party to pay one-half of the tax liability. We modify the decree to require each party to pay one-half of the 2015 tax liability.

**B. Dental practice.**

Bill also challenges the decree's provision directing him to pay Anne $150,000 for her share in his dental practice. The decree provides that the award shall draw interest at the statutory interest rate after ninety days. Bill asks us to modify the decree to order he pay Anne when he retires or sells the dental practice because it is his only source of income.

In dividing the marital property, the court assigns the assets their value at the date of trial. *See In re Marriage of Keener*, 728 N.W.2d 188, 193 (Iowa 2007).

The district court did so here valuing the practice at $300,000 and ordering Bill to pay Anne $150,000 for her share of the asset. The decree does not require Bill to pay Anne her share before his retirement or sale of the practice but provides her with interest for any payment made more than ninety days after the decree's entry. The function of an interest award is to compensate "the effects of inflation and the time value of money." David J. Marchitelli, Divorce and Separation: Award of Interest on Deferred Installment Payments of Marital Asset Distribution, 10 A.L.R.5th 191 (1993); *accord Keener*, 728 N.W.2d at 196 (modifying cash award to bear interest where the court failed to "consider the time value of money in determining [the] interest-free cash award" and the court's stated goal was equal property division); *In re Marriage of Conley*, 284 N.W.2d 220, 223 (Iowa 1979) (modifying the decree to provide that unpaid installments of the cash award made as part of property distribution should bear interest at the legal rate after noting that the farm and commercial building "are the kind of investments which traditionally are an effective hedge against inflation," while an "interest-free installment award . . . is the kind of asset which is most susceptible to the ravages of inflation"); *cf. In re Marriage of Thatcher*, 864 N.W.2d 533, 545 (Iowa 2015) (noting concerns arising when property values change between dissolution trial and property distribution in rejecting bifurcated dissolution proceedings). We further note that approximately $185,000 of the dental practice's value comes from a vacant lot owned by the practice, which can be sold at no detriment to Bill's ability to continue the practice and generate income. Accordingly, it is equitable to award Anne interest to compensate her for a delay in payment based on inflation or the time value of money.

### C. Mortgage payment.

Bill complains that it is inequitable to require that he pay the mortgage on the marital home until its sale when Anne resides there and receives spousal support. He claims that doing so provides Anne with no incentive to cooperate with the home's sale while binding him to an expense for an indefinite time.

With regard to the marital home, the decree provides:

> Until the house is sold, Anne shall have exclusive possession of the property. During the period of such occupancy by Anne, the respective interests of the parties in the property shall not be mortgaged, pledged, assigned, leased, or otherwise encumbered without the consent of the other party in writing, and no action for partition or other form of litigation seeking to terminate the rights of the other party shall be instituted. The parties, after considering any suggestions for the realtor to improve marketability of the property, shall cooperate in making the home ready for sale in order to obtain a sale on the best price and terms within a reasonable time frame.
>
> The parties shall agree on all improvements to the home in order to prepare it for sale. The party advancing the cost of such improvements shall first be reimbursed from sale proceeds before any equal distribution of proceeds to the parties. Neither party shall be reimbursed for any time or labor expended in maintaining or improving the property unless such time or labor is first approved by both parties. The parties agree that no reasonable offer will be refused. In the event that one party and the realtor feel that an offer is reasonable and the other party does not, the parties shall immediately submit the issue to arbitration, with the parties, the realtor, and the parties' counsel being present. If the arbitrator finds the losing party acted unreasonably or in bad faith, the arbitrator shall award the successful party the costs associated with the arbitration, including reasonable attorney's fees. The parties shall split any net proceeds from the sale of the marital home equally (50/50).

Although Bill's argument suggests that Anne could stall a sale of the home and continue to stay there indefinitely, free of expenses, the decree outlines specific steps the parties are required to undertake in selling the home, requires the parties to accept any reasonable offer, and provides a mechanism for enforcement if the parties cannot agree on a sale price. Bill may also file a contempt action if Anne

otherwise acts in willful defiance of the decree. *See Ary v. Iowa Dist. Ct.*, 735 N.W.2d 621, 624 (Iowa 2007). However, we modify the decree to provide that Bill be reimbursed for the principal on any mortgage payments he makes in advance of the home's sale. The closing or settlement statement for the sale of the house shall identify Bill's principal payment reimbursement before calculating the net proceeds payable to Anne and Bill.

### D. College savings accounts.

Bill asks us to amend the decree to award him care and control of the children's educational savings accounts, claiming that, historically, he has managed the accounts and has done so properly. The district court found Bill's explanation of his withdrawals from the children's college savings account to be "suspect" in light of his other actions. The court specifically found Bill's testimony "appeared to be anything but forthcoming and candid." We defer to this finding. As such, the transfer of the children's college savings accounts is reasonable under the circumstances.

### E. Dissipation of assets.

Bill argues the court acted inequitably in finding that he dissipated assets and in fashioning the remedy for dissipation.

The court may consider a party's dissipation of assets in determining an equitable property distribution. *See In re Marriage Kimbro*, 826 N.W.2d 696, 700 (Iowa 2007). The court considers many factors in determining whether dissipation occurred, including:

> (1) the proximity of the expenditure to the parties' separation, (2) whether the expenditure was typical of expenditures made by the parties prior to the breakdown of the marriage, (3) whether the

expenditure benefited the "joint" marital enterprise or was for the benefit of one spouse to the exclusion of the other, and (4) the need for, and the amount of, the expenditure.

*Id.* at 701 (quoting *In re Marriage of Fennelly*, 737 N.W.2d 97, 104 (Iowa 2007)).

In determining that Bill dissipated marital assets, the court found:

Bill's admission on the stand that he withdrew money from the USAA mutual fund IRA to pay off his bookey was a clear dissipation of assets as defined in *Kimbro* . . . . Specifically, he stated he took two early distributions from a USAA mutual fund IRA account— approximately $51,000 on January 27, 2015 and $55,250 on April 20, 2015—specifically for the purposes of paying off his gambling debts. These two withdrawals to pay off gambling debt total $106,250 and are considered assets dissipated by Bill. Anne is entitled to half of this amount.

Bill argues the district court erred in finding he dissipated the assets. He notes that although Anne filed her petition to dissolve the marriage in April 2015, he was not provided notice of the petition until May 2015—after he made the withdrawals from the IRA. He claims that he had no knowledge that Anne intended to file for divorce at the time he withdrew funds in April 2015 and that he had no ill intent in doing so.

Although the record shows that Bill began withdrawing money from his IRA as early as three months before Anne filed the dissolution petition, this does not foreclose on a finding of dissipation. "The dissipation doctrine applies when a spouse's conduct *during the period of separation* results in the loss or disposal of property otherwise subject to division at the time of divorce." *See In re Marriage of Balik*, No. 17-0805, 2018 WL 3912104, at *1 (Iowa Ct. App. Aug. 15, 2018) (quoting *Kimbro*, 826 N.W.2d at 700-01). Additionally, the evidence shows the actual expenditure of those funds occurred contemporaneously with Anne's initiation of the dissolution action. Finally, the record belies Bill's claim that he had

no knowledge of the dissolution action at the time of his withdrawals. One day before Anne filed the dissolution petition, Bill told police that he and Anne were "going through a divorce."

In the alternative, Bill argues that it is inequitable for the court to reimburse Anne for any funds Bill dissipated because Anne engaged in the same conduct by withdrawing $104,000 from her IRA. Although Bill admits he consented to Anne withdrawing funds from her IRA to spend on Christmas shopping, he argues he never consented to her withdrawing $104,000.

Unlike Bill's expenditure of $100,000 on a personal gambling debt, the record shows Anne spent the money from her IRA on maintaining the household and caring for her children and herself over the course of four years—the bulk of the money being spent prior to the parties' separation. Anne testified she withdrew funds from her IRA to use "for food, clothing, and for my house. I went on no trips. I bought no extravagant gifts. It was to maintain my children and myself because my income from Billy was minimal."

The district court's finding that Bill dissipated $106,250 is supported by the record.

**F. Overall property distribution.**

Finally, Bill claims the property distribution is inequitable because the court awarded Anne a greater portion of the marital estate in addition to spousal support. He argues that the spousal-support award balances the equities and, therefore, the court should divide the assets equally.

Bill's argument is premised on his belief that Anne received seventy-nine percent of the marital assets. However, his calculation includes each parties'

attorney fees—including the $40,000 in Anne's attorney fees he was ordered to pay—as marital debts. "Attorneys' fees incurred in dissolution proceedings are not marital debt." *In re Marriage of Hansen*, 733 N.W.2d 683, 703 (Iowa 2007). Rather, the court determines whether to award a party attorney fees based on both parties' respective needs and abilities to pay in light of the property distribution. *See, e.g.*, *Kimbro*, 826 N.W.2d at 704 (considering the parties' incomes, legal expenses, child-support and spousal-support payments, equalization payments, and overall property division in determining the parties' ability to pay trial and appellate attorney fees); *In re Marriage of Hitchcock*, 309 N.W.2d 432, 438 (Iowa 1981) ("Our modifications of the property division and alimony award equip Necia to pay her own attorney fees."). Accordingly, we remove the parties' attorney fees from our calculation in determining whether the overall property distribution is equitable.

Bill's calculation also includes the $53,125 that the district court ordered he pay Anne for his dissipation of his IRA, listing that amount as both his debt and Anne's asset. However, a dissipated asset is "included in the marital estate and awarded to the spouse who wasted the asset." *Kimbro*, 826 N.W.2d at 702. Therefore, our calculation awards Bill the total amount of the dissipated asset, as well crediting the equalization payment as Anne's asset.

With those adjustments and using the approximate values the parties rely on, the property distribution is as follows:

| Asset | Anne's share | Bill's share |
|---|---|---|
| Dental clinic | $150,000 | $150,000 |

| | | |
|---|---|---|
| *Marital home* | $76,000 | $76,000 |
| *Household furnishings* | $18,500 | $0 |
| *2004 Chevy Suburban* | $0 | $4203 |
| *2007 Subaru Tribeca* | $0 | $4000 |
| *2012 Buick Enclave* | $7595 | $0 |
| *IRA* | $0 | $5873.98 |
| *Credit card debt* | $0 | -$11,702.38 |
| *Bank account* | $0 | $3150.90 |
| *2015 federal taxes* | -$14,643.13 | -$14,643.14 |
| *2015 state taxes* | -$1876.90 | -$1876.89 |
| *Dissipated assets* | $0 | $106,250 |
| *Equalization payment* | $53,125 | -$53,125 |
| *Total* | $288,699.97 | $268,130.47 |

The property distribution provides Anne with approximately $288,699.97 in assets, while providing Bill with approximately $268,130.47 in assets. Although the award is not equal, it is far from the disparity Bill alleges, and we are unable to find it inequitable under the circumstances.

**IV. Spousal Support.**

Bill also challenges the spousal-support award, claiming the amount and duration of the award fails to do equity. He also complains the district court incorrectly determined his annual income.

In determining whether to award spousal support, the court considers the factors set out in Iowa Code section 598.21A(1). These factors include the length of the marriage, each party's age and health, the distribution of property, each

party's education, the earning capacity of the party seeking maintenance, and the feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage. *See* Iowa Code § 598.21A(1). Because we accord the trial court considerable latitude in determining matters of spousal support, we will disturb such an award only when there has been a failure to do equity. *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015).

In determining whether to award spousal support, the district court noted that Bill and Anne were married for twenty-six years. The court also noted the discrepancy in the parties' earning capacities and the "infeasibility" of Anne becoming self-supporting due to her age and the length of time she had been out of the work force. Specifically, the court found:

> When considering the feasibility of Anne becoming self-supporting, the Court considers she has not worked outside the home for the past fourteen years. She testified that her panic attacks in the classroom made it impossible for her to continue teaching, so she quit in 2003. She is now fifty years old and has been completely out of the job market for fourteen years. Even if Anne were to get her teaching certification up to date, it is unlikely she would find a teaching job that would allow her to become completely support herself in a lifestyle comparable to that which she had been living. This does not mean she is incapable of working; it simply means it is unlikely that she would ever be able to support herself in a manner comparable to her current standard of living. Based on her age, skill set, education level, and the fact she has been out of the work place for over fourteen years, the Court finds she has an earning capacity of $25,000.00 per year.

In contrast, the court determined Bill's gross annual income to be $173,515 by averaging his income from 2011 to 2015. The court further noted the parties had "a very traditional marriage," with Anne attending to the household and children while Bill managed his dental practice. Finally, the court noted that the property

distribution "will be minimal because very little property of value exists." Accordingly, the court found Anne was entitled to lifetime spousal support.

Bill complains that in calculating his income, the court included his 2011 earnings, which he argues was an anomaly. However, the averaging of income "over a reasonable period" is an appropriate method of determining a party's income when earnings are subject to substantial fluctuations. *Cf. In re Marriage of Knickerbocker*, 601 N.W.2d 48, 52 (Iowa 1999) (calculating monthly income for the purposes of determining child support). There is also evidence that Bill's reduction in earnings may be voluntary. The evidence supports a finding that Bill's annual income is $173,515.

The district court awarded Anne traditional spousal support. *Gust*, 858 N.W.2d at 408 (describing traditional spousal support as unlimited or indefinite in duration with the purpose of providing the receiving spouse with support comparable to what would have been received if the marriage continued). There is no "fixed formula" for determining whether to award traditional spousal support, but "marriages lasting twenty or more years commonly cross the durational threshold and merit serious consideration for traditional spousal support." *Id.* at 410-11. The parties' marriage of twenty-six years meets this threshold. However, the decision to award traditional spousal support primarily depends on the need of the spouse receiving the support balanced against the ability of the supporting spouse to pay. *See In re Marriage of Stenzel*, 908 N.W.2d 524, 533 (Iowa Ct. App. 2018). Taking into consideration Anne's needs and Bill's ability to pay, we agree that an award of $3000 per month in traditional alimony is appropriate under the facts of this case. Anne's earning capacity is $2083 per month, and she estimated

monthly expenses of $5726. Bill's earning capacity is $14,460 per month, and he estimated monthly expenses of $8926.82.[2]

**V. Child Support.**

Bill contends the court erred in calculating his child support payment. He claims Anne's spousal support should be considered in determining the parties' gross income and the court erred in determining the amount of his income.

When the decree was entered our child support guidelines did not provide a deduction for spousal support awarded under the decree. *See* Iowa Court Rule 9.5 (2017). A court has discretion to adjust the amounts provided by the guidelines upward or downward if the court finds an adjustment is necessary to provide for the needs of the children and to do justice between the parties. *See In re Marriage of Lalone*, 469 N.W.2d 695, 697 (Iowa 1991). When the amount of spousal support is smaller and payable for a lesser duration, our courts have found the failure to consider it does not amount to a substantial injustice. *See In re Marriage of McKamey*, 522 N.W.2d 95, 97, 99 (Iowa Ct. App. 1994) (finding no abuse of discretion in trial court's failure to consider spousal support award of $30 per week for period of four years in determining child support obligation); *In re Marriage of Miller*, 475 N.W.2d 675, 679-80 (Iowa Ct. App. 1991) (finding no injustice in failing to consider rehabilitative alimony in determining child support). Our courts have found it appropriate to consider spousal support awards in deviating from the

---

[2] Bill's estimated monthly expenses includes a child support payment of $1146.82; another $1500 for classes, lessons, tutors, school supplies, and school lunches, which are presumably expenses for the children; $1800 for housing and utilities; $500 per month for food; $450 for hobbies, recreation, and sports; $1190 for car payments, gas, and car repairs.

guidelines when the spousal support payment is of a substantial amount or is long-term in duration. *See Lalone*, 469 N.W.2d at 697 (upholding trial court's finding that spousal support "will affect the disposable income of both parents, and it would 'result in substantial injustice to Gary if he were required to make large alimony payments and the effect of those payments were ignored in computing his child support obligation'"); *In re Marriage of Milton*, No. 00-0617, 2002 WL 1840858, at *5 (Iowa Ct. App. Aug. 14, 2002) (finding it would be inequitable to not allow deduction for spousal support where not deducting the payments would increase income on which child support obligation was based by about $110,000 and overall support obligation by about $20,000); *In re Marriage of Hardy*, 539 N.W.2d 729, 732 (Iowa Ct. App. 1995) (finding long-term spousal support award of $2000 per month properly deductible in fixing child support); *In re Marriage of Russell*, 511 N.W.2d 890, 892 (Iowa Ct. App. 1993) ("We determine, given the substantial amount of alimony paid by appellant, it would be equitable to deduct the alimony when calculating his child support payments."); *In re Marriage of Benson*, 495 N.W.2d 777, 780-81 (Iowa Ct. App. 1992) ("We have modified the decree to award Marilyn alimony of $300 a month. This is long-term alimony and it is proper to deduct alimony from Stephen's wages and add it to Marilyn's income in determining child support."); *In re Marriage of Allen*, 493 N.W.2d 273, 275 (Iowa Ct. App. 1993) (finding substantial award of spousal support for an extended period should be considered in determining child support obligation). Considering both the substantial amount of the spousal-support award and the length of its duration, it is equitable to take it into account in calculating the child support obligation.

In any event, the child support guidelines have been amended since entry of the decree. Iowa Court Rule 9.5 now provides that "gross monthly income" includes traditional or rehabilitative spousal support payments. Iowa Ct. R. 9.5(1)(a) (2018). "If traditional or rehabilitative spousal support is to be paid in the pending matter, it will be determined first and added to the payee's income and deducted from the payor's income before child support is calculated." Iowa Ct. R. 9.5(1)(a)(1). The guidelines became effective January 1, 2018 and "shall apply to cases pending January 1, 2018." Iowa Ct. R. 9.1. We interpret this language to mean the new guidelines are to be applied to all cases pending on January 1, 2018, including those on appeal. *See In re Marriage of Roberts*, 545 N.W.2d 340, 343 n.2 (Iowa Ct. App. 1996).

We therefore remand to the district court to determine the amount of child support as specified by the present day child support guidelines.[3]

**VI. Attorney Fees.**

Bill contends the court abused its discretion in awarding Anne $40,000 in attorney fees. We will only overturn an award if the trial court abused its discretion. *See In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). In other words,

---

[3] We note that the Tax Cuts and Jobs Act (TCJA) repealed the provision of the federal tax code that allowed an individual to deduct spousal support payments from their income for purposes of filing taxes. *See* Tax Cuts and Jobs Act, Pub. L. No. 115–97, sec. 11051 131 Stat. 2054 (2017) (repealing 26 U.S.C. § 215). Iowa Court Rule 9.5(1)(a) was recently amended, effective January 1, 2019, "to clarify the different tax treatment of spousal support after implementation of the TCJA. Unless modified with the parties' consent, spousal support orders entered before January 1, 2019, are grandfathered, and the payor may continue to deduct spousal support payments and the recipient should report payments as income." Iowa Supreme Court Order, In the Matter of Adoption of Amendments to the Iowa Child Support Guidelines in Chapter 9 of the Iowa court Rules, Nov. 16, 2018, https://www.iowacourts.gov/collections/360/files/720/embedDocument/. The district court may consider any applicable tax consequences in determining child support.

the trial court's decision must rest on grounds that are clearly unreasonable or untenable.  *See Smith v. Iowa State Univ.*, 885 N.W.2d 620, 624 (Iowa 2016).

The trial court may award the prevailing party in a dissolution action attorney fees in an amount the court deems reasonable.  *See In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994).  In making this determination, the court must consider, in part, the respective abilities of the parties to pay.  *See id.*  Considering all appropriate factors and the parties' abilities to pay, we modify the award to require Bill to pay Anne $30,000 in trial attorney fees.

**VII. Appellate Attorney Fees.**

Anne requests that we award her appellate attorney fees.  Such an award is a matter of discretion with our court.  *See In re Marriage of Witherly*, 867 N.W.2d 856, 861 (Iowa Ct. App. 2015).  "Factors to be considered in determining whether to award attorney fees include: 'the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.'"  *Stenzel*, 908 N.W.2d at 538 (citation omitted).  We decline to award Anne appellate attorney fees.

**AFFIRMED AS MODIFIED.**