# IN THE COURT OF APPEALS OF IOWA

––––––––––––––

No. 25-0667
Filed April 15, 2026

––––––––––––––

**Ninkpibe Gnofam,**
Petitioner–Appellee,

v.

**Tim Braimah,**
Respondent–Appellant.

––––––––––––––

Appeal from the Iowa District Court for Pottawattamie County,
The Honorable Amy Zacharias, Judge.

––––––––––––––

**AFFIRMED**

––––––––––––––

Michael J. Winter, Council Bluffs, attorney for appellant.

Helen Broadway-Savage of Savage Law, LLC, Council Bluffs,
attorney for appellee.

––––––––––––––

Considered without oral argument
by Schumacher, P.J., Chicchelly, J., and Doyle, S.J.
Opinion by Schumacher, P.J.

1

**SCHUMACHER, Presiding Judge.**

Tim Braimah appeals from the district court's rulings, asserting that the modification to his child support obligation was based on an incorrect inclusion in his income of what he classifies as public assistance funds. He also argues that the district court improperly ordered him to pay trial attorney fees based on that same erroneous income calculation. Ninkpibe Gnofam requests an award of appellate attorney fees. Upon our review, we affirm the district court and award appellate attorney fees to Gnofam.

## I.    Background Facts & Proceedings

Braimah and Gnofam have two children together but were never married.[1] Braimah holds a bachelor's degree in law, two master's degrees in law, and a Ph.D. in human services. Gnofam holds a bachelor's degree.

After their relationship ended, an order was entered in April 2024 that adopted the parties' agreement concerning paternity, custody, visitation, and child support. Under the April 2024 order, the parties were awarded joint physical custody of their two children and operated under an agreed-to-parenting plan. Neither party was required to pay child support, but the order noted that either party could petition for modification. The court order highlighted that the child-support determination was "due to the unique living arrangements and employment and earning structure." After the order was entered, the parties continued to live together until their home sold in July 2024.

---

[1] Iowa courts apply the same legal framework and analysis regarding visitation and custody to unmarried parents as to divorced parents. Iowa Code § 600B.40(2) (2023) (cross-referencing section 598.41).

Before the parties separated, Braimah provided care for two dependent clients as a "shared living provider." The dependent adults lived in the home with the family. Braimah received funds through the licensed placement agencies for care of the dependent adults. The money paid to the agency was provided through federal and state funding.

Braimah and the agencies entered into written contracts for this work, wherein Braimah was listed as an independent contractor. Braimah's reimbursement rate was equal to that of seventy-seven percent of the managed care organization. Braimah received an average of $16,140.42 per month from this program for the care of one dependent adult client and around $8,000 per month for a second client. *See* Iowa Code § 239B.3. In addition to this monthly payment for services, Gnofam testified that room and board for the client are reimbursed to the caretaker anywhere from $600 to $800 per month.[2]

In 2023, Braimah had additional income of $39,000 from a company his mother owns in Chicago, although Braimah asserted at trial this payment was a gift from his mother.[3]

While the parties were residing together, Braimah was paying Gnofam $2,000 per month. Once the order was entered in April 2024, Braimah ceased payment. Less than a month later, Gnofam filed a petition for

---

[2] Gnofam indicated this was for the dependent adult's portion of rent, food, and utilities.

[3] Gnofam requested information on this employment with Braimah's mother. In the discovery responses, Braimah stated that Gnofam could "Google" his name for the information. Braimah testified he received a 1099 for this income in 2023.

modification, requesting that the court award her child support and attorney fees based on a change in circumstances since the entry of the original order.

When the parties began living apart, Gnofam lived off her savings.[4] But at the time of the modification trial, she was working for three employers earning a total of $65,168 a year. Gnofam was also providing health insurance for the children at a cost of $120 a month.

Braimah lost the second client after the parties' separation but continued to care for one dependent adult at a payment rate of approximately $16,140.42 per month at the time of the modification trial. Braimah asserted that the funds he received for the care of the client could not be used to calculate child support, as the funds are excluded from gross income due to the fact they are public assistance. Braimah also asserted that the funds from the agency are his only source of income and that after payment of expenses for the dependent adult, he is left with $2,000 per month, although in his discovery he conveyed he had no record of his living expenses. He urged the trial court to utilize the $2,000 figure for his monthly gross income for child support purposes and requested Gnofam pay him child support due to the joint-physical-custody arrangement.

Following trial, the district court included the funds Braimah receives as a shared living provider in determining his income to be $193,685 per year for purposes of calculating his child support obligation. The district court excluded the funds Braimah received from his mother. Under the child support guidelines with a joint-physical-custody arrangement, the district court ordered Braimah to pay $1,041 to Gnofam per month for child support

---

[4] Gnofam withdrew sums from two joint bank accounts, totaling $20,679.20 in July 2023. When the home was sold in July 2024, the parties split the equity, each party receiving approximately $20,000.

for two children, and $761 per month when only one child was eligible for support. The court awarded the tax dependency exemptions for both children to Gnofam as Braimah reported his income from the agency to be nontaxable. The court also ordered Braimah to pay a portion of Gnofam's trial attorney fees of $2,500 because of the "disparity in income and the need to continue trial because discovery had not been provided."

Braimah now appeals, and as he did at the trial court, he argues that the payments he receives as a shared living provider cannot be used in calculating child support. He also argues the award of attorney fees was based on an improper calculation of his yearly income.[5]

## II.    Standard of Review

We review child support modification proceedings de novo. Iowa R. App. P. 6.907. We give weight to the trial court's findings, especially when considering the credibility of witnesses, but are not bound by them. *Christy v. Lenz*, 878 N.W.2d 461, 464 (Iowa Ct. App. 2016).

## III.   Analysis

### A. Gross Income for Child Support Calculations

Braimah does not challenge the district court's finding of a material change in circumstances. He also does not challenge the district court's finding as to Gnofam's gross income. His argument on appeal is that the funds he receives from the agency for caring for a dependent client cannot be used in calculating child support as such qualify as public assistance funds,

---

[5] Although the district court was also tasked with determining whether the parenting schedule should be modified, neither party appeals that portion of the modified order.

which are exempted from the definition of gross income. He highlights that these funds are exempt from state and federal income taxes. Braimah contends that his child support should be based on a monthly income of $2,000, the amount he asserts remains each month after expenses. He requests that our court vacate the child support determination and remand to the trial court for "the recalculation of child support" with our court determining what, if any, amount of money earned by Braimah should be included in the child support calculations.

We begin with the definition of gross income as set forth in the Iowa Child Support Guidelines.[6] Gross income is defined under the guidelines as "reasonably expected income from all sources." Iowa Ct. R. 9.5(1). And the guidelines expressly exclude from the definition "public assistance payments, the earned income tax credit, or child support payments a party receives." Iowa Ct. R. 9.5(1)(b). Consistent with this broad definition, our supreme court has explained that "[t]he guidelines do not limit the definition of gross income to that income reportable for federal income tax purposes." *In re Marriage of Lee*, 486 N.W.2d 302, 305 (Iowa 1992).

Gnofam counters that because the funds dispersed to Braimah are "administered by a private non-profit organization," the funds are not provided by a public assistance program. Gnofam also argues that because Braimah himself does not qualify for public assistance, the funds cannot be designated as public assistance.

---

[6] The Iowa Supreme Court adopted amendments to the Iowa Child Support Guidelines, effective January 1, 2026. These amendments were not in effect at the time of the trial involved in this appeal.

Gnofam points to Iowa Administrative Code rules 441–99.1(1)(b) and 441–41.27(6)–(7) to inform what constitutes public assistance. She argues that rule 441–99.1(1)(b) specifically exempts income from public assistance programs listed in rule 441–41.27(7), and because Braimah's situation is not listed, it is not exempt from child support calculations.[7]

Under the language of rule 441–99.1(1)(a), income received through the family investment program (FIP) is exempted from consideration in determining child support. *See In re Marriage of Benson*, 495 N.W.2d 777, 781–82 (Iowa Ct. App. 1992) (holding "[t]he aid to dependent families [appellant] receives is a public assistance payment and is specifically excluded in the definition of income under the guidelines.").[8] But the income to Braimah is not for his benefit, but for the services he provides as a shared living provider for a dependent adult residing in his home.

Because we determine the payments received were for services provided as an independent contractor for the care of dependent adults, we affirm the inclusion of the same in Braimah's gross income for purposes of child support.

---

[7] Gnofam highlights Iowa Administrative Code rule 441–41.27(7)(d)(1)–(2), which lists as exceptions: "[f]oster care or kinship caregiver program payments received by the family that is: (1) [p]roviding foster care to a child or children when the family is operating a licensed foster home, or (2) [c]aring for a relative or fictive kin child or children placed in the home by a court order."

[8] "Iowa enacted FIP in 1993 to replace the Aid to Families with Dependent Children (AFDC) Program as part of the state's welfare reform initiative." Legislative Services Agency, Legal Services Division, *Legislative Guide: Family Investment Program, Food Assistance Program, State Child Care Assistance, and Earned Income Tax Credit* 2 (Daniel Gough ed., Oct. 2022).

## B. Trial Attorney Fees

Braimah challenges the court's order that he pay Gnofam $2,500 in trial attorney fees. "We review the district court's decision to award attorney fees for abuse of discretion." *Christy*, 878 N.W.2d at 469. In modification proceedings, the court may award attorney fees to the prevailing party in an amount deemed reasonable by the court. *In re Marriage of Rosenfeld*, 668 N.W.2d 840, 849 (Iowa 2003). "[W]e give the district court considerable discretion in determining whether it should award fees at the district court level." *In re Marriage of Michael*, 839 N.W.2d 630, 639 (Iowa 2013). Gnofam was the prevailing party at the trial court level. We find no abuse of discretion in the award of a portion of Gnofam's attorney fees of $2,500 and find such partial award was reasonable.

## C. Appellate Attorney Fees

We turn to Gnofam's request that she be awarded appellate attorney fees and recognize that she "was obligated to defend the district court's decision." *Christy*, 878 N.W.2d at 469. We also "consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* (citation omitted). Giving careful consideration to those factors, we award Gnofam her requested appellate attorney fees of $3,097.40.

## IV. Conclusion

For the above reasons, we affirm the district court and award Gnofam appellate attorney fees. Costs on appeal are assessed to Braimah.

**AFFIRMED.**